Merrimack, ⎱
May 5, 1936. ⎰

New Hampshire Savings Bank *v.* Alexander McMullen & a.

124

*Robert W. Upton* and *John H. Sanders* (*Mr. Sanders* orally), for Alexander McMullen.

*Chretien & Craig* (*Mr. Chretien* orally), for Margaret McMullen.

MARBLE, J. The claimant Alexander's contention that upon the uncontroverted facts he is entitled to a decree awarding the deposit

to him is based on the premise that when a deposit stands in the name of two or more persons, there is a presumption of equal ownership which cannot be overcome without affirmative proof. His counsel suggest that the trial court by refusing to adopt this rule (the substance of which is embodied in one of their written requests) gave no weight "to Nancy's record title," that "Alexander, who claimed under Nancy, was required to show that Nancy acquired title under such circumstances as to give her an equal right to the deposit," and that "The presumption of joint ownership resulting from a joint deposit which had been in existence for more than twenty years was rejected and the burden placed upon Alexander not only to show that there was a joint deposit but that the joint depositors were equal owners."

Alexander could not have made out a *prima facie* case by simply introducing the pass book and bank records. The addition of Nancy's name was perfectly consistent with a purpose on Thomas' part "merely to use her as a convenience in withdrawing money for him" (*Commercial Trust Co.* v. *White,* 99 N. J. Eq. 119, 126), and the substitution of Alexander's name for hers with the added words "or survivor" may well have been intended as a testamentary disposition of the fund (*Burns* v. *Nolette,* 83 N. H. 489, 492).

Apart from statute, it is the majority rule that a deposit by one in the name of himself or another, or the survivor, is unavailing in and of itself to give the other any ownership or interest in the account. See Annotations, 48 A. L. R. 191, 192; 66 A. L. R. 884. Such is undoubtedly the rule in this jurisdiction. See *Fernald* v. *Fernald,* 80 N. H. 75, 76, and cases cited. In *Burns* v. *Nolette,* 83 N. H. 489, 491, it was conceded that the addition of the defendant's name to the deposit book would not alone be sufficient to transfer to him any title to the funds, and in *Dover &c. Bank* v. *Tobin,* 86 N. H. 209, where, as here, the conflicting demands were litigated in interpleader proceedings, it was held that one who claims property as a gift *inter vivos* has the burden of establishing all facts essential to the validity of the alleged gift.

It was not necessary for Margaret in order to acquire ownership of the money on deposit to establish a gift of the account to herself during Thomas' lifetime, for she was the residuary legatee under Thomas' will. In all essential respects, therefore, Alexander is the real plaintiff. The purpose of P. L., *c.* 261, *s.* 28, is to protect savings banks and not to determine the rights of depositors and those claiming under them. *Dover &c. Bank* v. *Tobin, supra,* 211.

Since, as will later appear, the sole inference that could reasonably be drawn from the undisputed facts does not conclusively establish Alexander's case, his motion for a decree was properly denied. *Exeter Banking Co.* v. *Taylor*, 85 N. H. 458, 460, and cases cited.

Alexander excepted to various findings on the ground that they were unwarranted by the evidence. One of these findings is as follows: "So far as it appeared in evidence Nancy never made a deposit or withdrawal while the pass book stood in her name; Thomas made frequent deposits and withdrawals during that period." In their brief counsel for Alexander state: "This finding was made before the case was re-opened for the introduction of evidence showing that numerous withdrawals had been made by Nancy. Subsequently, findings were made showing the withdrawals by both Thomas and Nancy while Nancy was a joint depositor. ... But the findings that Nancy never made a deposit and that Thomas made frequent deposits were allowed to stand. There was no evidence whatever to show who made the numerous deposits." These latter statements are not strictly accurate. The court did not find that Nancy never made a deposit but only that there was no evidence that she did. The fact that Thomas made frequent deposits could be inferred from the testimony of the assistant treasurer of the bank who stated: "Thomas as a rule was the one who did the business. I know he didn't allow Nancy to do very much. ... I think he is the one that came in [referring to deposits after July 16, 1930], he generally did."

The court found that "During all the periods when his money stood in the so-called joint accounts Thomas kept possession of the pass book and during at least part of this period it was kept under lock and key, the latter being in Thomas' possession." This finding was fully warranted by the evidence. The executor testified that after Thomas' death the pass book was found in "a trunk containing Mr. McMullen's effects," that the trunk was locked and that the key was produced by Thomas' daughter-in-law, who had been caring for him during his last illness. Although Alexander testified that while his father was in Ireland he and his mother kept the book "in a box there in the house," the court was not obliged to accept this statement as true. It is significant that Alexander did not have the book with him when he drew from the bank the money to pay his mother's funeral expenses. The fact that Nancy made numerous withdrawals while her name was on the book did not necessarily indicate that her use of it was more than a permissive arrangement for the convenient management of the household.

Alexander excepted to the following findings or rulings because unwarranted by the evidence, because contrary to the evidence, and because opposed to the law and the evidence: "What ever interest Nancy had in the deposit did not result because she was a purchaser for value of the credit against the bank but because her husband Thomas, without consideration, attempted to give her a claim of some sort in the deposit. Nancy could establish no valid claim of interest in the deposit except by showing that a gift *inter vivos* had been created by what Thomas did. There being no evidence that the deposit book was delivered to or accepted by her, or that she had control over it, the transaction was no more than an ineffectual attempt to make a testamentary disposition."

In the foregoing paragraph the court considers various interests which Nancy might have had in the deposit and finds that she was neither a purchaser nor a donee. There is of course no evidence of a literal purchase and sale of any part of the deposit, and although there was a substantial increase in the fund during the period when Nancy's name was on the pass book, this circumstance did not compel a finding that Nancy contributed financially thereto. Neither the signing of the signature card (an act required by the bank) nor Nancy's possession of the pass book as disclosed by the testimony could evince that "manifest intention of the donor to give" and that "unconditional delivery and acceptance" of the thing given which is essential to the establishment of a valid gift. *Dover &c. Bank* v. *Tobin*, 86 N. H. 209, 210. A third disposition of the deposit which Thomas could have made was a testamentary one, but the arrangement in question, if designed to be of that character, was void under the statute of wills. *Burns* v. *Nolette*, 83 N. H. 489, 492.

Alexander excepted to the supplemental findings made after the case had been re-opened and evidence introduced showing that Nancy had made frequent withdrawals. These findings were as follows: "It did not appear whether these withdrawals by Nancy were for her own use or by the direction of Thomas and for his use; one theory is as consistent as the other, but the fact that Nancy did make these withdrawals over this period of some twenty years does not indicate that this privilege could not be revoked by Thomas at any time before the whole deposit was withdrawn. This evidence does not change the Court's views as to the ownership of this deposit."

It is contended that these findings were erroneous because the court refused "to give effect to the presumption of legal ownership arising from the joint account of Thomas and Nancy." The ques-

tion of law presented by the exception has been considered in the discussion relating to the motion for a decree. The same is true of the exception to the ruling that there was no presumption of law that when Thomas created the deposit in the names of himself or Nancy they became co-owners of the deposit.

Counsel for Alexander contend that the following findings, to which exception was taken, are wholly inconsistent with the uncontroverted facts: "There is no evidence that Thomas regarded Nancy's consent as essential to a valid substitution of Alexander's name on the book, any more than when on Jan. 24, 1931 he took off the name of Margaret without apparently having any doubt about his exclusive right to do so. I find, therefore, that between Nancy and Thomas there was no mutual understanding or agreement that Thomas should not exercise any power of removal as to the name of Alexander from the bank book. Instead of there being a contract against such a removal, all the evidence is equally consistent with their mere expectation that no such change would occur."

It is not claimed that there is any direct evidence that Thomas believed Nancy's consent essential to the substitution and such belief cannot fairly be inferred from the surrounding circumstances, since the suggestion that Alexander's name be placed on the bank book instead of his mother's came apparently from Nancy herself. The court could properly find that there was no understanding between Nancy and Thomas that Alexander's name should not be removed from the pass book especially in view of the court's expressed inability to give credence to Alexander's testimony as to what his father had told him about the transaction.

Alexander excepted to the exclusion of his testimony concerning the contents of the letter of December, 1929. It is unnecessary to consider the validity of this exception since the presiding justice has asserted that "The declaration if accepted as establishing all that it narrates does not establish any more definite undertaking by Thomas than to put Alexander into Nancy's shoes as respects the deposit" and that he "cannot find from the declaration that Thomas and Nancy understood that Thomas promised to pay to Alexander any part of the deposit, or regarded Alexander as the owner of any part."

The executor of Thomas' will was not joined as a defendant until after the first hearing. He testified, however, at that hearing, and was then asked: " . . . did Mr. Thomas McMullen at the time that you made his will tell you that he had made an assignment of his bank account to his wife and that that had been done for the purpose of

taking care of her?" The answer was excluded, subject to Margaret's exception.

The presiding justice found on the evidence submitted at the first hearing that the executor by delivering the bank book to Margaret and failing to make claim to the deposit apparently intended to renounce any claim thereto and that consequently no decision as to whether Margaret had established a gift *inter vivos* was required. He ruled that if the executor after being notified of this conclusion failed "to raise the above question by becoming a party hereto" he would be held to have renounced all claims and that Margaret would be entitled to the entire deposit.

After the findings were filed, the bank moved that the executor be made a party defendant. This motion was granted. The executor then filed an answer, the material paragraphs of which follow.

"On December 2, 1931, I was called to the home of Thomas McMullen who asked me to make his will. The only statement he made with reference to the bank book which is the subject of controversy in this case was, in effect, as follows:

" 'I have transferred to my wife money in the savings bank which will take care of her after my death.'

"After the death of Mr. McMullen, I found the bank book in controversy in his trunk, and later delivered the same to Margaret McMullen, the widow.

"Upon these facts the executor submits to the Court the question as to whether or not he should be made a party defendant in the above action."

On this question the court found: "At the hearing of Feb. 1, 1935, when the newly discovered evidence was offered, the Executor waived any rights he might have to object to evidence already offered or to introduce new evidence with the exception of a statement made to him by Thomas when he made the latter's will. This evidence was taken by deposition on March 21, 1935. In this deposition the Executor testified, and I find it as a fact, that at the time he made Thomas' will he was told by Thomas in effect as follows: 'I have money in the savings bank which I have transferred to my wife and that will take care of her pretty substantially.' To the introduction of this evidence Alexander objected and is given an exception . . . .

"I rule that there was no valid gift *inter vivos* to Margaret but that the Executor has renounced all claims to the deposit."

It may be conceded that the evidence excepted to by Alexander was not admissible against him as a declaration bearing on Thomas'

intention to make a gift of the bank account to Margaret. *Scott* v. *Bank*, 140 Mass. 157, 166; *Veader* v. *Veader*, 89 N. J. Law, 399. But the evidence was not used against Alexander. The court had already found against him with the evidence in question excluded. The executor testified that he delivered the bank book to Margaret because he believed that by so doing he was carrying out the testator's wish. The evidence was considered merely on the question submitted to the court by the executor's answer. Alexander could not have been harmed by its admission.

Exceptions not referred to in the briefs are understood to be waived.

*Exceptions overruled.*

All concurred.