340 P.2d 1094

IDAHO FIRST NATIONAL BANK, a National Banking Association, as Administrator of the Estate of Walter Griffiths, Deceased, Plaintiff-Respondent,

v.

FIRST NATIONAL BANK OF CALDWELL, Caldwell, Idaho, Defendant,

and

Walter Griffiths, Jr., and Helen M. Griffiths, Husband and Wife, Defendants-Appellants.

No. 8565.

Supreme Court of Idaho.

June 23, 1959.

Rehearing Denied July 15, 1959.

Alexanderson & Davis, Gigray & Boyd, Caldwell, for appellants.

Meek & Miller, Laurence N. Smith, Caldwell, for respondent.

J. Ward Arney, Pat W. Arney and Mc-Farland & McFarland, Coeur d'Alene, amici curiae.

McQUADE, Justice.

Re-rehearing was granted, and the opinion on rehearing, filed December 2, 1958, is withdrawn and this opinion substituted therefor.

The plaintiff, Idaho First National Bank, as administrator of the estate of Walter Griffiths, deceased, referred to herein as the administrator, instituted this action against the defendants, First National Bank of Caldwell, Walter Griffiths, Jr., and Helen M. Griffiths, husband and wife, to recover for decedent's estate certain funds from Walter Griffiths, Jr., and Helen M. Griffiths, and to determine ownership of certain land sale contracts executed by the deceased with various purchasers, and in addition to determine title to a promissory note.

Defendant First National Bank of Caldwell did not appeal from the judgment of the lower court, and will not be considered here on appeal. Walter Griffiths, Jr., and Helen M. Griffiths will be referred to hereafter as the defendants or appellants.

From a judgment in favor of the plaintiff administrator, defendants take this appeal.

The issues presented by this case are whether titles to the bank account, land sale contracts and a promissory note were transferred through the medium of a joint survivorship agreement as gifts inter vivos, or whether such an agreement was executed for the purpose of business convenience or necessity.

During his lifetime Walter Griffiths was by profession an attorney at law. His clientele for a time included the defendant bank, the First National Bank of Caldwell. He accumulated a sizable estate, in excess of $150,000. He left no issue, and died intestate on December 26, 1955, at about the age of 89 years. His next of kin consisted of nieces and nephews, one of whom is defendant Walter Griffiths, Jr.

The defendants were residing on one of Walter Griffiths' farms when in January of 1950 Walter Griffiths, because of his failing health, went to live with his nephew and the latter's wife, during which time he paid them $50 per month. During July, Griffiths suffered a severe illness which occasioned a surgical operation and hospitalization for approximately two months. At that time, he executed a bank signature card which authorized his nephew to draw checks on a checking account.

After the illness, Griffiths returned to his office and continued practice of his profession until September of 1954. In 1953, Griffiths made a gift of the farm on which they resided, and an automobile, to his nephew and the latter's wife.

On November 12, 1954, Griffiths relinquished management of his business affairs to his nephew, except for the execution of certain real estate contracts. On that date, Walter Griffiths, Walter Griffiths, Jr., and Helen M. Griffiths executed the following agreement:

"Agreement Regarding Joint Account Opened

"under the name of ___Walter Griffiths___ the undersigned, Joint Depositors, hereby agree, each with the other and with The First National Bank of Caldwell, Caldwell, Idaho that all sums heretofore or hereafter deposited by said joint depositors or either of them, with said bank, to their credit as such joint depositors, in the account above mentioned, shall be owned by them jointly, with the right of survivorship and be subject to the order or receipt of either of them or the *survivor* of them, and payments thereof, to either shall discharge said bank from liability to either, or the heirs, executors, administrators or assigns of either. This agreement shall not be changed or terminated without written notice to said bank and such notice shall not affect the deposits heretofore made. In case of the temporary closing of this account a deposit thereafter made by either party is subject to the conditions herein mentioned unless said bank is otherwise notified in writing and this agreement terminated.

| | | |
|---|---|---|
| "Dated Nov 12 1954 | Walter Griffiths | Joint |
| "The First National Bank | Walter Griffiths Jr. | Depositors |
| of Caldwell, Caldwell, Idaho | Helen M. Griffiths | |

"By EWE

"SYMS–York Co. 210773

"To The First National Bank of Caldwell, Caldwell, Idaho

"Below please find authorized signature(s) which you will recognize in the payment of funds or the transaction of other business on my (or our) account, and it is agreed that:

"In receiving items of deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on the day following the day deposited.

"(Sign Here)    x          Walter Griffiths

"(Sign Here)    x          Walter Griffiths Jr.

"(Sign Here)              Helen M. Griffiths

"Account Opened By

"Date    11/12/54         Address  Bx 93 or R No. 3, Caldwell

"If joint account is desired have *both* parties sign above and *both* parties execute agreement on back of card.

"Griffiths, Walter, Walter Jr., or Helen".

The name of Walter Griffiths was not written in at the top of the agreement at the time of execution; and at the instance of Walter Griffiths, Jr., it was filled in by the bank manager, designating the account of the uncle to which the agreement would apply. This account, at the time of Walter Griffiths' death, had credited to it the sum of $44,141.42. Subsequent to November 12, 1954, Griffiths did not examine the account balance nor the bank statements, but would only ask the defendant, Walter, Jr., as to the balance in the checking account. This arrangement continued until Griffiths' death December of 1955. Immediately after his uncle's death, Walter Griffiths, Jr., withdrew $43,000 from the checking account and deposited it to his own account.

The trial court made findings of fact and concluded that the execution of the joint survivorship agreement was for business convenience and business necessity, and that it was not the intention of Griffiths to vest any ownership in the defendants of the amount credited to the bank account.

Between October, 1953, and November 23, 1955, Griffiths executed nine contracts of sale of real estate having a total balance due thereon after execution in excess of $93,000. The contracts were placed in escrow at the bank, with instructions to credit

the payments under the contracts to his account. There was, in addition to the contracts, a promissory note executed in June, 1950, payable to Walter Griffiths, in the sum of $1,254.59, payments on which were to be deposited to Griffiths' bank account.

Appellants claim title to the bank account, the land sale contracts, and the promissory note, and base their assertion upon the executed joint account agreement.

Walter, Jr., checked at the bank to determine the type of card his uncle signed in 1950, and secured the joint account cards. When his uncle requested the cards, they were on hand at the home for execution. Appellants also emphasize the fact that the uncle had executed one card for convenience, and therefore intended something more by the new agreement.

Two witnesses testifying for appellants were contradictory in their testimony, one of them stating he understood Walter Griffiths to say that the contracts were fixed at the bank, and his nephew would receive them, whereas the other witness testified Walter Griffiths was disposing of his property by a will. The defendant Walter Griffiths, Jr., testified his uncle had developed love and affection for him, and at the time the joint account agreement was executed his uncle said, "Everything is all yours now, Walter."

The administrator introduced evidence to show that the deceased intended the agreement to be for business convenience and necessity. This evidence may be summarized as follows: (a.) there was a close and confidential relationship between defendants and the deceased; (b.) Walter Griffiths, Jr., acted in his uncle's stead for all business matters after November 12, 1954, the date the joint account agreement was executed; (c.) the agreement pertained to the joint checking account, and was not related to the land sale contracts held in escrow nor to the promissory note; (d.) at the time the joint agreement was executed, decedent was aged, physically infirm, with his hearing impaired, and required the use of a strong magnifying glass for reading; (e.) in the summer of 1955, the defendant nephew summoned Frank Meek, an attorney for his uncle, advising the attorney his uncle wished to make a gift of the entire estate to said defendant; when defendant Walter, Jr., requested his uncle in the presence of Frank Meek to turn all the property over to him, the uncle refused to discuss the matter; (f.) on November 22, 1955, Walter Griffiths, Jr., withdrew $2,000 from his uncle's checking account, and on the face of the check inscribed the word "loan."

The trial court, upon the facts, concluded that the agreement was executed for business necessity and convenience, and did not constitute a gift; that no valid transfer of the land sale contracts and the promissory note had been made to the defendants.

Judgment was entered in favor of the plaintiff and against the defendants in the sum of $43,000 plus interest, and defendant bank was ordered to deliver the balance of the money in the account to the administrator; the defendant bank was also ordered to deliver the proceeds from the escrow real estate contracts and the promissory note to the administrator.

Appellants assign 19 assignments of error, relating almost exclusively to the findings of fact, conclusions of law, and decree. There is no necessity to treat them separately, as the assignments all go to the fundamental proposition that the trial court erred as to the findings and the decree based thereon.

Idaho Code sec. 26–1014 relating to joint survivorship agreements pertaining to bank deposits reads as follows:

"When a deposit has been made, or shall hereafter be made, in any bank, in the names of two or more persons, payable to any of such persons or payable to the survivor, or survivors, such deposit, or any part thereof, or interest or dividend thereon, if not then attached at law or in equity in a suit against any of said persons, may be paid to any of said persons, whether the other be living or not, and such payment shall discharge the bank making the same from its obligation, if any to either or any of such other persons or their legal representatives for or on account of such deposit. This section shall apply to husband and wife to all intents and purposes the same as to other persons."

The defendants rely upon the agreement for a transfer of titles to the promissory note and the land sale contracts, upon the legal theory that a gift inter vivos had been made at the time the joint account agreement was executed. All proceeds from the contracts and the note were, by escrow agreement or otherwise, to be deposited in the deceased's checking account. Because of this relationship between the checking account and the escrow contracts, the defendants thereby assert a legal conclusion that the lawyer uncle intended to make a gift of the land sale contracts and promissory note. We shall deal summarily with this proposition.

The joint account agreement and its legal effect have been a subject of controversial discussion by almost all of the courts in the United States. Many fictions have grown up as to the legal bases and legal effects of such agreements upon checking accounts, savings and loan accounts, and safe deposit boxes.

■ Defendants, by virtue of their asserting title to the checking account on the basis that a gift was made, assert a gift of all property the proceeds of which were paid to the checking account. This is a new theory with which we are not familiar, insofar as transfer by joint account agreements

prevails. No decision has been brought to our attention on the contract theory, trust theory, legal effect theory, or gift theory, which considers property other than that to which the instrument has direct reference. Defendants have failed to prove any of the essentials necessary to effect a gift inter vivos of the land sale contracts and the promissory note. Because there is no direct proof of a gift inter vivos, their assertion of title is without foundation, and fails. The contracts and the promissory note are property of, and properly distributable by, the estate.

We next proceed to the joint account agreement and the effect which it has, under the evidence, on the checking account, which was in the sum of $44,141.42 at the time the uncle expired.

In Gray v. Gray, 78 Idaho 439, 304 P.2d 650, where a deceased father had deposited his sole and separate funds under a joint account agreement with his daughter, and no evidence was introduced to prove an adverse intent, this Court held that the agreement effected a gift and created a joint tenancy.

Idaho has joined that group of states which hold that such an agreement may effect a gift. 48 A.L.R. 189, 66 A.L.R. 881, 135 A.L.R. 993, 149 A.L.R. 879.

In determining the effect of a joint bank account agreement, the determinative consideration is the intent of the depositor, and this is a question for the trier of facts. Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380. Recently this Court held, in Shurrum v. Watts, supra, that during the lifetime of the parties the presumption of joint tenancy and right of survivorship is rebuttable. After the death of the sole depositor, the establishment of his intent is a more difficult problem, such as in the case at hand.

The statute which authorizes joint account agreements, I.C. sec. 26–1014, is intended primarily for the protection of banks. It is said in New Hampshire Sav. Bank v. McMullen, 88 N.H. 123, 185 A. 158, 161, the purpose of the statute

"* * * is to protect savings banks and not to determine the rights of depositors and those claiming under them. Dover Cooperative Bank v. Tobin's Estate, supra, 86 N.H. 209, at page 211, 166 A. 247."

See also Rice v. Bennington County Sav. Bank, 93 Vt. 493, 108 A. 708, 711, wherein that Court said:

"* * * Whatever the purpose or scope of this statute [G.L. 5376], neither its provisions, nor any practice that we are aware of relating to the transfer of bank deposits, have relieved a party claiming a deposit by gift from proving the facts necessary to constitute a gift.

* * * * * *

"The provisions of G.L. 5376 are for the protection of the bank paying

money to persons named in deposits made in the manner specified in the statute, and do not change or affect the title to such deposit."

The Iowa case of Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841, 853, states:

> " * * * The legal relationships created by the establishment of joint bank deposits have long perplexed the banks, the depositors and the courts. The banks, in particular were in a continuous quandary, since until the rights of depositors were determined they could not be certain to whom the account might be safely paid. To remedy the situation many of the states passed statutes substantially identical in import with Section 9267 [I.C.A. § 528.-64]. [This statute closely parallels our I.C. sec. 26–1014.] * * * such legislation was enacted for the protection of banks with respect to the payment of the funds, and does not affect their title to the deposit, or determine the legal rights of the parties thereto as between themselves * * *.

> " * * * Appellant refers to the certificates of deposit as three party contracts. This is true with respect to the right to make and to receive payment, but it is not true with respect to fixing or determining ownership, in fact, of the funds deposited, as between the joint payees. * * *"

This Court has limited the effect of the Gray case in the Shurrum case by allowing living parties to testify as to the intent of the depositor in creating the joint account. Strict enforcement of these agreements without regard to intent of the parties making them would present serious conflicts with our statutes relating to the laws of intestate succession, community property, testate distribution, and limitation on charitable bequests.

The case of Gordon v. Toler, Ch.Ct., 83 N.J.Eq. 25, 89 A. 1020, 1021, contains the following:

> " * * * The question is whether this section was intended to do anything more than protect savings banks. It certainly was not designed to make that a gift which, according to the evidence, was not a gift, present or future, but only a convenient way of drawing money, and it ought not to be construed as an implied repealer pro tanto of the Wills Act [N.J.S.A. 3A:3–1 et seq.] if the two statutes may stand together. It is manifest that they may. The survivor may hold in trust for the estate of the deceased depositor, and the bank, taking the receipt of the surviving depositor, may be discharged from liability for what it pays out. It is not to be presumed that the Legislature, under an act entitled 'An act concerning savings banks,' intended, if it could constitutionally intend, to repeal the Wills

Act in part, and thus to dispense with those safeguards which have so long been deemed essential to protect the estate of a decedent. * * *."

This case is cited in Mathias v. Fowler, 124 Md. 655, 93 A. 298, and in Reeves v. Reeves, 102 N.J.Eq. 436, 141 A. 175.

■ Where competent evidence, and all of the reasonable inferences to be drawn therefrom, establish an intent of a depositor, since deceased, contrary to that indicated in the creation of a joint account, the assertion of joint tenancy will not be sustained. The evidence presented herein is sufficient to overcome the presumptive effect of the agreement, and amply sustains the findings of fact, conclusions of law, and judgment of the trial court. Defendants have failed otherwise to establish the necessary elements of a gift.

■ Where there is sufficient, substantial, and competent, though conflicting, evidence to support the findings of the trial court, and the findings are not clearly against the weight of the evidence, they will not be disturbed on appeal. Howay v. Howay, 74 Idaho 492, 264 P.2d 691; Jensen Motor Sales v. Chandler, 77 Idaho 303, 291 P.2d 1116; Anselmo v. Beardmore, 70 Idaho 392, 219 P.2d 946; Ryan v. Day, 74 Idaho 159, 258 P.2d 1146; In re Davenports' Estates, 79 Idaho 548, 323 P.2d 611; Manley v. MacFarland, 80 Idaho 312, 327 P.2d 758;

Larson v. Lindsay, 80 Idaho 242, 327 P.2d 775.

■ Where money in a joint account is deposited by one party, and thereafter a question of the depositor's intent arises, the party asserting the gift must prove all the elements of a gift, excepting irrevocable delivery, by clear and convincing evidence. The question of intent of decedent having been raised, defendants were required to assume the burden of proof and to establish by clear and convincing evidence such elements of a gift. Claunch v. Whyte, 73 Idaho 243, 249 P.2d 915; In re Estate of Randall, 64 Idaho 629, 132 P.2d 763, 135 P.2d 299; McNabb v. Brewster, 75 Idaho 313, 272 P.2d 298.

The judgment is affirmed.

Costs to respondent.

TAYLOR and SMITH, JJ., concur.

PORTER, C. J., and KNUDSON, J., not participating.

YOUNG and BELLWOOD, District Judges (concurring in part and dissenting in part).

We concur with the majority opinion that no valid gift or transfer of the land sale contracts and the promissory note was made by the decedent to appellants by virtue of the

joint account agreement or otherwise. The contracts and promissory note are properly to be distributed as part of decedent's estate, and the judgment for the plaintiff-administrator should be, to that extent, affirmed.

We are, however, unable to agree with the majority opinion as regards the bank account which is the subject of the joint-account-with-right-of-survivorship agreement. In our opinion, the judgment for the plaintiff-administrator should be, to that extent, reversed, and for two reasons: First, the evidence as disclosed by the record clearly does not support the conclusion that the account in question was opened for business convenience. Second, the effect of the decision of the majority is to create further uncertainty as to the effect of joint-and-survivorship bank accounts on the death of an owner-depositor.

It must be recognized that the joint account agreement, with right of survivorship, such as we find in this case, and its legal effect, have been a subject of discussion among almost all of the courts in the United States where such agreements are used. A recognized legal theory to justify the transfer of funds caused by such arrangements has not been agreed upon by the courts, yet with few exceptions most of the courts have agreed that such accounts will transfer an interest in funds on deposit at the time of the depositor's death. In the cases we find the courts relying upon theories of contract, trust, joint tenancy, and gift. The ultimate conclusion that could be drawn from all of these cases is aptly expressed by Donald Kepner in a Law Review article entitled "Joint and Survivorship Bank Account—a concept without a name", found in the California Law Review, winter 1953–1954, vol. 41, No. 4. On page 635 of said Law Review Professor Kepner summarizes the law:

"Throughout this discussion there have been repeated references to the fact that the joint accounts do not fit into any of the common law categories for transferring property. The joint bank account does not qualify as a common law gift, because the donor does not surrender dominion. It is not a trust, because there is no intention on the part of the depositor to enter into such relationship. Neither is it a common law joint tenancy, because the four unities essential for creating this joint interest are lacking. While the parties may enter into a contract providing for the payment of the funds, the contract itself does not operate as a conveyance of the funds from one joint payee to the other joint payee. It is not a will, because it does not comply with the statutory formalities.

"The joint and survivorship bank account transaction is a combination of all of the methods of transferring property listed in the preceding paragraphs. It partakes of the nature of a gift be-

cause it is gratuitous. It is like a will in that the beneficiary is not certain of the amount of the donation until the depositor's death. It is similar to a joint tenancy because of the creation of joint interests. It has some of the characteristics of a revocable trust. Since the joint account combines in part the features of gifts, wills, joint tenancies and revocable trusts it is a new concept possessing independent characteristics of its own. It should be recognized as such."

As pointed out by the majority, Idaho has joined that group of states which hold that such an agreement as we have here may effect a gift:

> "Our statute, abrogating the common law rule of joint tenancy, does not abolish such tenancy. It merely declares that such an interest is in common 'unless declared in its creation to be a joint interest, * * *.' * * * Here the tenancy was created by a written agreement in which the parties declared the tenancy to be joint. *Thus a valid gift of a joint interest in the account, with right of Survivorship, was made and effectively delivered to the plaintiff at the time the account was created,* (emphasis supplied) and the balance in the account at the time of Cecil's death was and is the property of the plaintiff. * * *" Gray v. Gray, 78 Idaho 439, 304 P.2d 650, 654.

While we may not have a true gift inter vivos (and none is necessary), this Court has recognized that it is a gratuitous transfer of the property of the owning depositor.

It appears to us that the ruling of the majority in this case will nullify the Gray case, and is tantamount to holding that the creation of a joint account, with right of survivorship, in the manner selected by the decedent is without force or effect. The majority rule would permit such an act to be challenged in virtually every instance; the anomaly is born that the survivor must prove the decedent did precisely what he unequivocally stated in writing that he did. The bank card, or joint account agreement, states that the funds deposited with the bank "shall be owned by (the parties to the joint account) jointly, with the right of survivorship, and be subject to the order or receipt of either of them or the *survivor* of them * * *." The language is clear, without ambiguity, unequivocal. These words can be, and we believe are, clearly understood or understandable by the public. If we are to give any effect to these accounts, why should this clearly expressed intention be ignored?

The depositor is not required to open this type of account. He can open an agency account, with no provision for survivorship, which is precisely what the depositor did with one account in Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380, where the survivorship provision was stricken by the depositor.

He can open a trust account if he wishes, or he can do what the decedent did here in 1950 when he executed a "power of attorney" card at the same bank, permitting appellant Walter Griffiths, Jr., to withdraw funds "until further notice."

The depositing public should know with a reasonable degree of certainty what effect the opening of such an account will have, if we are to allow it to have any effect at all. The execution of a joint account agreement, such as we are here concerned with, should not be an invitation to litigation upon death of one of the parties. A written instrument, admittedly executed by the decedent, unequivocal in its provisions, should be, in itself, after the death of the depositor conclusive evidence of an intent by the original owner of the funds to make a valid transfer of a joint interest in the account, with right of survivorship, at the time of the creation of the account, unless the instrument is impeached for reasons known to and approved by the law. In this case there is no question of fraud, undue influence, duress, coercion, incompetence or unsound mind, or mistake. The burden of proof should be upon him who seeks to impeach. The presumption which is suggested here would, of course, apply only to the issue of ownership at the time of the death of the original owner-depositor, and would not apply to the case where survivorship provision is absent, or to the situation where a dispute over ownership of the funds arises during the lifetime of the parties to the joint and survivorship account.

We can agree that I.C. sec. 26–1014, relating to joint account agreements, is intended primarily for the protection of the banks in making payment from joint accounts. We do not consider it to have any bearing on the issues in this case. Here the decedent owned the money prior to the execution of the written instrument disclosing a purpose and intent on his part to give another a joint interest. The property being the decedent's, he could do with it as he pleased, and we know of no provision or principle of law which will prevent such a transfer as his expressed intent declared.

The majority expresses concern for the legal consequences of the joint account agreement—its direct effect upon the laws of intestate succession, community property, wills, and charitable bequests. We fail to understand how the rule promulgated in this minority opinion would have greater effect upon those statutes than does a true gift inter vivos. We do not understand that a gift inter vivos is set aside because it is contrary to the intestate laws, or because it does not comply with the statute of wills, or because it gives more than would be allowed under the charitable bequest limitations. And, of course, if a husband attempted to transfer community property to someone other than his spouse by means of a joint survivorship account, the situation would be no different from a gift inter vivos, of com-

munity property. Anderson v. Idaho Mutual Benefit Association, 77 Idaho 373, 292 P.2d 760.

Additional facts, in our opinion, compel the conclusion here reached. The decedent was a lawyer with many, many years of experience, with special and extensive experience in the field of banking. He was a "lone wolf" with his accumulations of wealth, self-sufficient, and rather not too communicative. He did not want to give up all control over his funds during his lifetime, was opposed to wills for reasons of his own, and was willing to provide other means of passing his property at his death. While the 1950 "power of attorney" card at the same bank was in effect and not revoked, in 1954 decedent executed the joint account agreement, with right of survivorship, with the appellants. It is a curious thing, if it was done solely for business convenience, that the appellant-wife was added to the bank card, or that the 1954 bank card was executed at all. The curiosity disappears, however, when the free and voluntary act of the decedent in 1954 is examined in the light of the clear language used, and which still stands without impeachment. The purpose is clear; "business convenience" is unsupported. The majority opinion explains that the administrator introduced evidence to show that the deceased intended the agreement to be for business convenience and necessity. That evidence is summarized into six parts, (a) to (f), and the majority concludes therefrom that the joint survivorship account agreement was executed for business necessity and convenience and did not constitute a valid transfer. In our opinion the conclusion is a *non sequitur* and unwarranted.

Considerable weight is given to the testimony of Frank Meek, longtime legal associate of decedent, to the effect that when he called upon the decedent and asked if he wished to make a transfer of all of his property to appellant-nephew, the decedent did not respond. It must be recognized that decedent did have considerable property other than the bank account in question, and his lack of response in no wise lessens the effect of his free and voluntary act in 1954 with respect to the bank account. On the contrary, decedent's lack of response is consistent with the nature of the decedent as described by witness Meek, and affirmatively shows that decedent was quite capable of acting, and did act, in accord with his own will.

While we recognize that joint survivorship bank accounts may be peculiarities of the law, at the same time we must recognize their existence and common use. In the absence of any legislative enactment or legal principle prohibiting them, and until the legislature deems it wise to deal with them specifically, fair and just rules aimed at certainty and tranquility should be applied, particularly when the intent is so clearly expressed by the parties as it was here.