462 P.2d 715

James Orville WOODWARD, Glen Woodward, Thelma Dalton and Joyce Dickason, Plaintiffs and Respondents,

v.

Bessie MONSON, Defendant and Appellant.

No. 11593.

Supreme Court of Utah.

Dec. 22, 1969.

Richard H. Thornley, of Froerer, Horowitz, Parker, Richards, Thornley & Critchlow, Ogden, for appellant.

Robert E. Schoenhals, of Mark & Schoenhals, Salt Lake City, for respondents.

CALLISTER, Justice.

The parties to this action are the children and heirs at law of James Leon Woodward. Mr. Woodward, prior to his death, created with his daughter, Bessie Monson, the defendant, a joint bank account with rights of survivorship in the First Security Bank in Preston, Idaho, and his estate was probated there. After Mr. Woodward's demise, his daughter, Bessie Monson, withdrew the funds from the joint account in Idaho and deposited them in Ogden, Utah, where she resides. The plaintiffs initiated this action to obtain their proportionate share of the bank deposit, contending that the funds were the sole property of Mr. Woodward.

The trial court concluded that decedent intended to make a testamentary disposition of the funds on deposit in the Idaho bank to defendant, trusting her to pay the expenses from his last illness and burial. Since the decedent did not comply with the formal legal requirements for a testamentary disposition of the funds, the court found that the gift had failed and rendered judgment to the plaintiffs after making an appropriate allowance for the disbursements made by defendant.

About a year prior to his death, Mr. Woodward brought the joint banking account agreement to his daughter Bessie in Ogden, Utah, and requested her signature. He instructed her that if anything happened to him she was to withdraw the money from the bank and take care of his burial. He informed her that the pass book would be located in a trunk at his home in Preston, Idaho, where she subsequently found it. During his last illness, decedent stated to others that he had money in his and Bessie's names, and that Bessie was to pay his bills and whatever was left was hers.

The record further revealed that decedent had resided in Ogden, Utah, during the winter months and frequently on weekends, and had maintained a close relationship with Bessie and her family. On the other hand, the plaintiffs rarely contacted

their father, and there appeared a certain degree of alienation between them and their father arising out of the divorce of their parents some years prior.

The courts seem to agree that title to and rights in a bank deposit standing in the names of the depositor "and" another is governed by the law of the place where the deposit has been made and the account is kept.[1]

The parties pleaded that the substantive law of Idaho was applicable in the instant action, and the trial court determined the rights of the parties in accordance therewith. However, a careful survey of Idaho law reveals error on the part of the trial court in its application of the law to the facts.

 The following are the rules we have derived from In re Chase's Estate [2] and Idaho First National Bank v. First National Bank of Caldwell: [3] A joint tenancy survivorship account, if created as provided by statutory law, although it does not have all of the elements of a completed gift at the time of its creation, may be accorded such an effect. The mere creation of a joint survivorship account, however, is not *conclusive* as to the rights of survivorship. If the account is intended *purely* for the *convenience* or *business necessity* of the putative donor, then no right of survivorship attains. Initially, there is a presumption that the agreement creates a joint tenancy with full rights of survivorship.

Where competent evidence, and all of the reasonable inferences to be drawn therefrom, establish an intent of a depositor, since deceased, contrary to that indicated in the creation of a joint account, the assertion of joint tenancy will not be sustained. \* \* \*[4]

When the evidence is sufficient to overcome the presumptive effect of the joint tenancy survivorship agreement, the Idaho court applies the following:

Where money in a joint account is deposited by one party, and thereafter a question of the depositor's intent arises, the party asserting the gift must prove all the elements of a gift, except irrevocable delivery, by clear and convincing evidence. The question of intent of decedent having been raised, defendants were required to assume the burden of proof and to establish by clear and convincing evidence such elements of a gift. \* \* \*[5]

The facts revealed in In re Chase's Estate indicated that the depositor created the account for business convenience. He was

1. 25 A.L.R.2d 1241, Anno.: Joint Bank Deposits—Governing Law.
2. 82 Idaho 1, 348 P.2d 473 (1960).
3. 81 Idaho 285, 340 P.2d 1094 (1959).
4. In re Chase's Estate, note 2, supra, at p. 478 of 348 P.2d.
5. See note 4, supra.

elderly, and there were no banking facilities in his town; so he had his daughter, the joint tenant, conduct his business. He further indicated his intent by making a testamentary disposition of the deposits to his grandchildren. Under these circumstances, the court held that the joint tenant had failed to sustain her burden of proof that decedent had intended a gift effectual upon his death.

The trial court in Idaho First National Bank v. First National Bank of Caldwell[6] concluded that the execution of the joint survivorship agreement was for the business convenience or necessity of the depositor, where, prior to his death, due to his age and infirmities, his nephew acted in his stead in all business matters.

 In the instant action plaintiffs did not sustain their burden to overcome the presumptive effect of the joint tenancy survivorship agreement. As we interpret the Idaho decisions, plaintiffs had the initial burden to raise a question as to the depositor's intent. They failed to present any competent evidence, which reasonably inferred that the account at its creation was intended purely for the convenience or business necessity of the putative donor, James Leon Woodward.

We, therefore, conclude that a joint interest was vested in defendant at the time of creation of the account, which became her sole property through right of survivorship upon the death of James Leon Woodward. The judgment of the trial court is reversed; costs are awarded to defendant (appellant).

CROCKETT, C. J., and TUCKETT and HENRIOD, JJ., concur.

ELLETT, Justice (dissenting).

I dissent. Since the Idaho law will determine the ownership of the funds in dispute herein, let us look at the law as set out in the Idaho cases.

The case of Gray v. Gray, 78 Idaho 439, 304 P.2d 650 (1956), was a dispute between a daughter of decedent by his first marriage and his surviving widow. The court awarded a joint bank account to the daughter, and in doing so said:

Our statute, abrogating the common law rule of joint tenancy, does not abolish such tenancy. It merely declares that such an interest is in common "unless declared in its creation to be a joint interest, * * *." § 55-104, I.C. Here the tenancy was created by a written agreement in which the parties declared the tenancy to be joint. Thus a valid gift of a joint interest in the account, with right of survivorship, was made and effectively delivered to the plaintiff at the time the account was created, and the balance in the account at the time of

6. Note 3, supra.

Cecil's death was and is the property of the plaintiff. [Citations omitted.]

However, this was dictum because the only issue raised in that case was whether the funds were community funds or the separate funds of the deceased. That case does not assist us in the instant matter.

Shurrum v. Watts, 80 Idaho 44, 324 P. 2d 380 (1958), involved a dispute between a mother and her son wherein the mother contended that the son had used funds jointly owned by them to buy land, the title to which was in the name of the son only. Both of the so-called joint tenants were living at the time of suit. The dispute arose after the father died and mother remarried. The trial court found as a fact that the mother had no interest in and to the funds used to purchase the property, and there was testimony to sustain the finding. On cross examination of the son it was brought out that in creating the so-called joint bank account it was his desire that the account descend to his mother "in case anything would happen to me, like I got killed or something." The court found that the son did not intend to create a so-called joint bank account when he placed the funds in the account. The greater part of the decision relates to the presumptions as to whether work done by one member of a household is to be paid for by other members thereof.

The case of Idaho First National Bank v. First National Bank of Caldwell et al.

[sometimes referred to as the Griffiths' case], 81 Idaho 285, 340 P.2d 1094 (1959), was a suit by the administrator to recover funds deposited in a joint bank account of decedent and the individual defendants. The lower court held for the administrator, and the Supreme Court of Idaho affirmed.

The case of In re Chase's Estate, 82 Idaho 1, 348 P.2d 473 (1960), presented for determination the question of ownership of certain joint bank accounts. This seems to be the latest Idaho case on the question. Here, appellants sued to have determined the ownership of certain joint bank accounts in the name of decedent and defendant. The trial court after a hearing found that the joint account in the Rathdrum State Bank did not give rise to the right of survivorship in the defendant and that the defendant held the funds in another joint bank account in trust for the plaintiffs, who were grandsons of decedent and legatees under his will. In holding that the plaintiffs were entitled to the joint accounts the court said:

The Shurrum case paved the way for the third decision, Idaho First Nat. Bank v. First Nat. Bank of Caldwell (and Griffiths), 81 Idaho 285, 340 P.2d 1094, 1098, sometimes known as the Griffiths' case, wherein this Court held:

"In determining the effect of a joint bank account agreement, the determinative consideration is the intent of the

depositor, and this is a question for the trier of facts. * * *

* * * * * *

The Court then, in the Griffiths' case, sets out the rule applicable in the case at bar, as follows:

"Where money in a joint account is deposited by one party, and thereafter a question of the depositor's intent arises, the party asserting the gift must prove all the elements of a gift, excepting irrevocable delivery, by clear and convincing evidence. The question of intent of decedent having been raised, defendants were required to assume the burden of proof and to establish by clear and convincing evidence such elements of a gift." [Citations omitted.]

* * * * * *

The issue of Mr. Chase's intent in creating the accounts having been raised, the question is whether respondent, by clear and convincing evidence proved a gift to her of those bank accounts, completed upon the death of decedent. * * *

* * * * * *

I am unable to conclude, as does the main opinion, that any burden was upon the plaintiffs herein to establish that the joint account was not a gift. I think under Idaho law the trial court was correct in holding that the burden was upon the *defendant* to show a gift by clear and convincing evidence, inasmuch as the question of the intent of the decedent had been raised by the pleadings.

Even had the burden been upon the plaintiffs, I think it was amply sustained and that the joint account was merely an attempt at a testamentary disposition. The only words ever said by decedent to the defendant and the circumstances surrounding them were testified to by the defendant herself:

Q Now, at the time he met with you to place you on the joint account, will you tell us all that was said regarding the joint account?

A Well, he had had dinner with us on the Sunday and he got ready to leave and he said, "Just a minute, I have got a card out in the car I have been carrying around and have forgot to have you sign," he said, "I want you to put your signature on it so if anything happens to me you can take care of my burial expenses."

Q Now, this was the only conversation you ever had with your father concerning this joint account, wasn't it?

A Yes.

Q And, he never at any time told you anything more regarding that joint account?

A No.

Q Other than he had placed your name on it to help take care of his burial expenses?

**324**

A Yes.

Q That's all he ever told you regarding the joint account?

A Yes.

Q Now, at the time he placed you on the joint account he did not deliver to you the passbook, did he?

A No, he told me where it was.

Q And, you never had possession of the passbook during his lifetime, did you?

A No, I didn't.

The decedent while in the hospital just before he died was asked by his brother why not sign a check to pay for his expenses, and he replied, "You don't need to worry about that. I have money in the bank for Bessie, in her name."

The brother testified as follows:

Q Now, did he say anything about who he wanted his property to go to after he died?

A Yes.

Q What did he say?

A He said, he said, "If I have anything when I am gone," he said, "I want Bessie and her family to have it."

A close friend visited the decedent in the hospital and asked him, "Lynn, have you got everything fixed so your kids won't have to have everything go to court and everything?" To which question the decedent replied, "Yes, everything is okay. I have got it fixed so the kids won't have to go to court. It is in Bessie's name and my name. Bessie is to pay my bills, funeral bills and hospital, whatever I owe and over that, what is left is hers."

Now, this does not sound to me like the money in the joint account was a gift to Bessie. The most that can be said is that the decedent gave Bessie specific directions as to what he wanted done with his money and if there was anything left over, he wanted her to have it.

Bessie apparently did not feel that the money belonged to her, for she falsified repeatedly to the plaintiffs about having any knowledge of the money even after she had withdrawn it from the joint account and placed it in her own name in another bank. She also made a distribution of $1,-000 to each of her brothers and sisters except one whom she apparently considered to be a black sheep. The record does not show that Bessie had ever before given money to her brothers and sisters, and one wonders why, if she thought this money was really hers, she would give so much of it away and why after paying the bills of her father she would make no claim therefor when his estate was probated.

The trial court determined that there was no gift or transfer of the proceeds in the account by the deceased to the defendant and that the deceased intended a testamentary disposition thereof at the time

the joint account card was signed. The evidence sustains the trial court, and on appeal it is the duty of this court to do likewise.[1]

I think the judgment should be affirmed with costs awarded to the respondents.

1. This court has repeatedly held that findings of the trial court are to be reviewed on appeal in a light most favorable to sustain them. See Charlton v. Hackett, 11 Utah 2d 389, 360 P.2d 176; DeVas v. Noble, 13 Utah 2d 133, 369 P.2d 290, and cases cited therein. Does the main opinion purport to overrule that well-established rule? One wonders.