563 P.2d 972 (1977)
Estate of Carl T. BARNHART, Deceased, and Irma M. Barnhart, Surviving Spouse, Petitioner-Appellant,
v.
Patricia E. BURKHARDT et al., Respondents-Appellees.
No. 75-663.
Colorado Court of Appeals, Division II.
January 27, 1977.
Rehearing Denied March 10, 1977.
Certiorari Granted May 9, 1977.
*974 Samuel J. Eaton, Denver, for petitioner-appellant.
James S. Kimmel, Littleton, for respondents-appellees, Patricia E. Burkhardt and Frank Barone, Jr.
No appearance for respondent-appellee Elnora V. Grover.
BERMAN, Judge.
Petitioner, the decedent's second wife, appeals from a decision of the Denver Probate Court disallowing her election to take a one-half share in the augmented estate of her deceased husband as provided for in § 15-11-201, C.R.S.1973, and disallowing her claim to have certain transfers made by the decedent set aside and the assets brought within the jurisdiction of the probate court for distribution. We affirm in part, and reverse in part.
Carl T. Barnhart (the decedent) and petitioner were married on February 28, 1958. Between 1963 and March 18, 1974, he opened five joint tenancy savings accounts with certain individuals, supplying all funds deposited in those accounts. Four of the joint tenancy accounts are part of the subject of this appeal. From two of these accounts all funds were withdrawn approximately two months prior to decedent's death by those he had named as joint tenants. No withdrawals were made from the other accounts.
On April 12, 1974, the decedent executed a deed purporting to convey in joint tenancy certain realty to his two daughters by a prior marriage. The deed was prepared at decedent's direction by his attorney, and, after its execution, the deed was left with the attorney, who caused it to be recorded that same day. Neither daughter, however, knew of the execution or recordation of the deed until after their father's death. Each daughter also held U.S. Series H savings bonds in joint tenancy with the decedent. These bonds were issued in October of 1973 in exchange for U.S. Series E savings bonds previously held by the decedent in his own name. Carl Barnhart died on June 19, 1974.
At the conclusion of the hearing on the surviving spouse's petition, the court held that since the transfers were all made prior to the effective date of the Code, namely, July 1, 1974, the augmented estate provisions of the Colorado Probate Code did not apply. The court also held that there was no evidence to indicate that the transfers were fraudulent or colorable, or that they did not take effect at the time they were made. The court thereupon denied the petition.

I.
Petitioner first contends on appeal that the augmented estate provisions of the Colorado Probate Code, § 15-11-202, C.R.S. 1973, apply to the joint tenancy arrangements at issue regardless of the date of creation. We disagree.
In the instant case, the rights of the surviving joint tenants in the bank accounts, realty, and United States savings bonds vested prior to the effective date of the Colorado Probate Code. Section 38-11-101, C.R.S.1973 (rights vest in surviving joint tenant at time of death where personal property is held in joint tenancy); In Re Estate of Lee v. Graber, 170 Colo. 419, 462 P.2d 492 (1969) (rights vest in all joint tenants at time joint tenancy created in real property); 31 C.F.R. § 315.62 (surviving co-owner of U.S. savings bonds as sole and absolute owner). Since § 15-17-101(2)(d), C.R.S.1973, provides that the Colorado Probate Code shall not impair any right which accrued prior to July 1, 1974, it follows that the augmented estate provisions of the Code are inapplicable to these joint tenancy arrangements. See In Re Estate of Novitt, Colo.App., 549 P.2d 805 (1976). Further, to have applied the augmented estate provisions to these joint tenancies would have violated Colo. Const. Art. II, Sec. 11, which bars retroactive operation of a statute resulting in impairment of vested rights. In Re Estate of Novitt, supra. Thus, we hold that the probate court properly refused to apply the augmented estate provisions to *975 the joint tenancies involved in the instant case.

II.
Petitioner next argues that the joint tenancy savings accounts from which all funds were removed prior to decedent's death were part of a plan to disinherit her, and as such constituted a fraud on her rights. We do not agree.
It is well settled in this state that a husband has the power to transfer his property during his lifetime to whomever he sees fit, "even though it has the effect of depriving the wife of all right to inherit any part thereof, provided the transaction is bona fide and not merely colorable. This is true even though the express purpose. . is to deprive another of his right of inheritance." Richard v. James, 133 Colo. 180, 292 P.2d 977 (1956); Moedy v. Moedy, 130 Colo. 464, 276 P.2d 563 (1954).
The trial court held that there was no evidence that the gifts were procured through fraud or undue influence or that they were not intended to and did not take effect at the time they were made. If at no earlier time, these inter vivos gifts became effective upon the absolute and irrevocable delivery of the funds. See Urbancich v. Jersin, 123 Colo. 88, 226 P.2d 316 (1950); Johnson v. Hilliard, 113 Colo. 548, 160 P.2d 386 (1945).

III.
Petitioner then asserts that the remaining savings accounts opened by decedent in joint tenancy are void as testamentary dispositions not in compliance with the law. She argues that decedent desired to disinherit her and that neither of the surviving joint tenants made any withdrawals or exercised any control over the bank accounts. She contends that this evidence is sufficient under the rule announced in Urbancich v. Jersin, supra, to mandate the setting aside of these joint tenancy accounts. Again we disagree.
C.R.S.1963, 76-1-5 (now § 38-11-101, C.R.S.1973), provides that upon the death of one joint tenant title to the property passes immediately to the surviving joint tenant. In order to set aside a joint tenancy properly created, it is necessary to show that the joint tenancy was created purely for the convenience or a business necessity of the putative donor, and that no right of survivorship was intended. Woodward v. Monson, 23 Utah 2d 318, 462 P.2d 715; see Urbancich v. Jersin, supra.
In the instant case the trial court held that there was no evidence which indicated that the gifts did not take effect at the time they were made, and petitioner failed to present any evidence that the accounts were created for the convenience or necessity of the donor. The findings of the trial court are adequately supported by the record and thus will not be disturbed on review. Broncucia v. McGee, 173 Colo. 22, 475 P.2d 336.

IV.
Petitioner argues that the purported gift of decedent's realty to his daughters was ineffective for want of delivery of the deed. Specifically, she asserts that neither daughter knew of the joint tenancy prior to the decedent's death, and that they failed to exercise any control over the property. On these facts, petitioner asserts that the deed was never delivered, and concludes that the transfer was void as an attempted testamentary disposition not in compliance with the law. Here, too, we disagree.
Here, the facts disclose that the deed was prepared at the decedent's direction by an attorney, and after it was executed and acknowledged, it was left with the attorney who caused it to be recorded. Thus, the instant case falls squarely within the rule announced in Thuet v. Thuet, 128 Colo. 54, 260 P.2d 604, that "a delivery [to a third person] is effectual to convey title to the grantee upon the grantor's death, although the grantee is not aware of the delivery until after the grantor's death. . . . It is not essential to a valid delivery [to a third person] that the grantee knew of the existence of the deed before the grantor' death." Further, the fact that the deed was recorded prior to *976 decedent's death created a rebuttable presumption of delivery of the deed. Carmack v. Place, 188 Colo. 303, 535 P.2d 197 (1975); White v. White, 149 Colo. 166, 368 P.2d 417 (1962). Therefore, the recording of the deed under these circumstances was sufficient to show delivery of the deed and acceptance of its terms absent an express disavowal by the grantee. No such disavowal was shown, and thus we hold that delivery was shown.

V.
Finally petitioner contends that the U.S. savings bonds transferred from the decedent to himself and his daughters were originally purchased by the decedent and petitioner jointly, and that her interest in the bonds was fraudulently transferred. Petitioner testified that she contributed $18.75 monthly over a period of eight years to the decedent for the purchase of Series E bonds. These bonds were issued in decedent's name only. In October of 1973, decedent told petitioner he was going to convert the Series E bonds to Series H bonds, which he did. Unbeknownst to petitioner, however, decedent placed the Series H bonds in the names of his daughters and himself.
The general rule is that if U.S. savings bonds are placed in the names of two people in the alternative, the survivor is recognized as the sole and absolute owner. Meyer v. Mercier, 102 Colo. 422, 80 P.2d 332 (1938); 31 C.F.R. § 315.62. And, since state law is not applicable to vary the property rights created by the bonds and the treasury regulations governing the rights of the parties, even the absence of delivery in a gift situation does not affect the right of the surviving co-owner to absolute ownership. Meyer v. Mercier, supra; 37 A.L.R.2d 1221. However, the above rules do not preclude the courts from permitting others to pursue the proceeds of the bonds and have constructive trusts declared in cases of fraud or inequitable conduct. Anderson v. Benson, 117 F.Supp. 765 (D.C.Neb.1953); Henderson's Adm'r. v. Bewley, 264 S.W.2d 680 (Ky.App.1953); overruled on other grounds in Marcum v. Marcum, 377 S.W.2d 62 (Ky.App.1964).
Although the trial court in the instant case held that none of the transfers were fraudulent, it did not determine whether petitioner had contributed to the original purchases of the Series E bonds. From this state of the record we find it impossible to determine whether the trial court correctly applied the law to the facts. The failure of the court to make specific findings of fact and conclusions of law, as required by C.R.C.P. 52(a), requires that we remand on this issue.
Judgment affirmed in part, reversed in part, and cause remanded for further proceedings consistent herewith.
COYTE and VanCISE, JJ., concur.