Ruth H. Hart, Plaintiff, *v.* Eloise G. Hart et al., Defendants.

Supreme Court, Special Term, New York County, June 22, 1948.

*William L. Hanaway* and *Herman A. Heydt* for plaintiff.

*Edward G. Bethon* and *John H. Regan* for Eloise G. Hart, defendant.

*A. M. Sherwood* for City Bank Farmers Trust Company, as executor of Boies C. Hart, deceased, defendant.

Botein, J. The plaintiff, who was the first and allegedly the only wife of the decedent, brings this action for a declaratory judgment adjudging (1) that she is the lawful wife [*sic*] of the decedent; (2) that a colorable Reno, Nevada, divorce is invalid and of no force and effect in law; (3) that the decedent and the codefendant, whom he purportedly married following the Reno divorce, were not husband and wife; (4) that all transfers and assignments made by the decedent during his lifetime to the afore-mentioned codefendant be set aside and vacated, be adjudged void as to the plaintiff and retransferred to the estate of the decedent, as though he had died possessed of same.

It is evident from the conduct of the trial and the subject matter of her briefs that the first three branches of the judgment sought by the plaintiff as recited above are not sought as ends in themselves. They must necessarily be established to settle upon the plaintiff a status which would entitle her to challenge the validity of certain transfers made by the decedent — the real objective of this suit. The plaintiff seeks to have the court hold that she is the lawful surviving spouse of the decedent so that she may be eligible to assert her right of election under section 18 of the Decedent Estate Law to take her share of the decedent's estate as in intestacy. While the decedent's will gives to the plaintiff one third of his estate, which is mathematically the same fraction thereof she would be entitled to under the intestacy statute, it has been held that nevertheless a widow may rely upon section 18 " in support of her action to set aside a revocable trust as illusory where the very purpose of the decedent in so conveying was to avoid its application. * * * The grievance of the widow in the *Newman* case (*supra*), as here, relates not to a direct violation of that law [§ 18], but to evasion thereof in reducing the *quantum* of the estate." (*Schnakenberg* v. *Schnakenberg,* 262 App. Div. 234, 236–237.) The *Newman* case cited in the above-quoted excerpt is the leading case of *Newman* v. *Dore* (275 N. Y. 371), which will be discussed *infra*.

Over a period of many years, beginning shortly after his marriage to the codefendant, the decedent purchased United States Government bonds and had them registered in the names of " Boies C. Hart or Mrs. Eloise Grayston Hart " (the decedent and codefendant respectively). These bonds had accumulated to a substantial principal amount at the time of the decedent's death. Shortly after their marriage the decedent

also caused his active bank account to be changed from his individual name to the name of Boies C. Hart and/or Eloise G. Hart. At the time of his death there was a substantial balance in this account.

The plaintiff seeks an adjudication that these two funds were illegally transferred to the codefendant and that they be retransferred to the decedent's estate. Before passing upon her right to thus assail these transfers, it is not inappropriate to first determine whether they are in fact and law vulnerable as claimed. The status of the plaintiff under section 18 does not enable her to nullify transfers made by the decedent during his lifetime simply because they were made without consideration. The statute constitutes " a restraint only on testamentary powers. It did not refer in any way to non-testamentary powers." (*Mitchell* v. *Mitchell*, 265 App. Div. 27, 29.)

The general rule is that notwithstanding the provisions of section 18 of the Decedent Estate Law, a spouse is still free to dispose of his property during his lifetime and as he chooses — provided such disposition is not illusory or merely colorable. This would hold true though the result would be to deprive the surviving spouse of her distributive share.

In *Newman* v. *Dore* (*supra*) the court said (pp. 376–377): " The ' enlarged property right ' which the Legislature intended to confer is only an expectant interest dependent upon the contingency that the property to which the interest attaches becomes part of the decedent's estate. The contingency does not occur, and the expectant property right does not ripen into a property right in possession, if the owner sells or gives away the property. (*Herrman* v. *Jorgensen,* 263 N. Y. 348; *Matter of McCulloch,* 263 N. Y. 408.) Defeat of a contingent expectant interest by means available under the law cannot be regarded as an unlawful ' evasion ' of the law."

The motives animating the decedent in making the transfers are not necessarily controlling in fixing the plaintiff's rights under section 18. The primary consideration is whether the decedent in good faith made real or illusory transfers of his property. The norms of the good faith exercised in transferring his property need not be consistent with what would ordinarily be deemed good faith toward the plaintiff — although conceivably in certain instances the latter could have some probative bearing upon the former.

" The only sound test of the validity of a challenged transfer is whether it is real or illusory. That is the test applied in *Leonard* v. *Leonard* (*supra*). The test has been formulated

in different ways, but in most jurisdictions the test applied is essentially the test of whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer. ' The good faith required of the donor or settlor in making a valid disposition of his property during life does not refer to the purpose to affect his wife but to the intent to divest himself of the ownership of the property. It is, therefore, apparent, that the fraudulent interest which will defeat the gift *inter vivos* cannot be predicated of [*sic*] the husband's intent to deprive the wife of her distributive share as widow.' (*Benkart* v. *Commonwealth Trust Co.,* 269 Penn. St. 257, 259.) '' (*Newman* v. *Dore, supra,* p. 379.)

Guided by the principles above enunciated, the conclusion is irresistible that the disputed transfers were real and not illusory. By stipulation embodied in a judgment entered in a prior action between the plaintiff and the decedent, he made a substantial property settlement upon her, agreed to carry generous amounts of life insurance for the benefit of the plaintiff and of their son and agreed to and did pay to the plaintiff a large portion of his income thenceforth. Presumably the bonds and the bank balance in question were purchased and accumulated out of the remainder of his current income. Evidently, and without commenting on the relative adequacy of his arrangements for either wife, the decedent sought to make parallel provisions for his second wife.

Whatever his intent the result of the form in which the decedent established the two funds in dispute was to effectuate real transfers to the codefendant. They are far removed from the devices most frequently encountered whereby a decedent would seek to retain control of his property during his lifetime and thwart the rights of his wife from materializing at his death (see *Bodner* v. *Feit,* 247 App. Div. 119).

Respecting bonds registered in the names of alternative co-owners, Regulations Governing United States Savings Bonds (Code of Fed. Reg., 1945 Supp., tit. 31, § 315.45) provides in part: '' (c) * * * If either coowner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving coowner will be recognized as the sole and absolute owner of the bond * * *.'' These regulations have the force and effect of law. They form part of the contract between the purchaser of the bond and the Government of the United States, and, to the extent that State law or policy may be in conflict with such regulations, the latter

must be upheld (*Matter of Deyo,* 180 Misc. 32, 39; *Matter of Willoughby,* 45 N. Y. S. 2d 177). In recognition of this principle the State of New York has provided by legislative enactment that the rights of owners, co-owners and beneficiaries of United States Savings Bonds shall not be "defeated or impaired by any statute or rule of law governing transfer of property by will or gift or an intestacy" (Personal Property Law, § 24. Cf. *Deyo* v. *Adams,* 178 Misc. 859; 1943 Report of N. Y. Law Revision Commission, p. 525).

The bank account which was in the joint names of the decedent and codefendant represented their property as joint tenants. Section 134 of the Banking Law (subd. 3) so provides and further states that such an account "may be paid or delivered to either during the life time of both, or to the survivor after the death of one of them * * *." An account so established creates in each joint tenant a present vested right, and a transfer effected through the instrumentality of such a joint account is not illusory, but a valid *inter vivos* gift (see *Matter of Lorch,* 33 N. Y. S. 2d 157, 164).

In view of the foregoing, the transfers must be held to have been real, not illusory, and there is no need to consider the other issues presented in this case. Judgment is granted in favor of the defendant and the complaint is dismissed. Settle findings, conclusions and judgment within ten days, on five days' notice.