No. 37,889

DIMMIE LEMON, *Appellant*, v. SIDNEY L. FOULSTON, as Administrator
of the Estate of Bates T. Hamilton, Deceased, *Appellee*.

(219 P. 2d 388)

Opinion filed June 10, 1950.

*J. Wirth Sargent,* of Wichita, argued the cause, and *W. D. Jochems, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden* and *S. C. Durbin,* all of Wichita, were with him on the briefs for the appellant.

*Enos E. Hook,* of Wichita, argued the cause, and *Sidney L. Foulston, John H. Gerety* and *Sidney L. Foulston, Jr.,* all of Wichita, were with him on the briefs for the appellee.

*Lester Luther,* United States Attorney, *Eugene W. Davis,* Assistant United States Attorney, and *Malcolm Miller,* Assistant United States Attorney, filed a brief *amicus curiae* on behalf of the United States of America.

The opinion of the court was delivered by

THIELE, J.: The question presented in this appeal concerns ownership of United States Savings Bonds, Series G, issued in the name of co-owners, and arises out of the following:

Bates T. Hamilton and Dimmie E. Hamilton, who had been married in 1911, were divorced on February 6, 1946, the decree of divorce making no provision for settlement of any property rights between them. On February 7, 1946, the two went to the Fourth National Bank in Wichita, in which they had a joint account, where the sum of $4,800 was withdrawn and eight bonds of the above series totaling the principal amount of $4,800 were purchased, the names of the payees being Bates T. Hamilton or Mrs. Dimmie E. Hamilton. Under date of February 28, 1946, the above bank issued its safe-

keeping receipt that it had received of Bates T. Hamilton or Mrs. Dimmie E. Hamilton the above eight bonds for safekeeping and that the bonds would be surrendered only upon return of the receipt. At an appropriate place on the receipt for the signature of the depositor only the name of Bates T. Hamilton was signed. On July 18, 1948, Bates T. Hamilton died intestate and under appropriate proceedings in the probate court Sidney L. Foulston was appointed as administrator of his estate and duly qualified as such. At some undisclosed date Dimmie E. Hamilton remarried and became Dimmie Lemon. On December 28, 1948, Dimmie Lemon commenced an action against the administrator in the district court to replevin the bonds. The defendant demurred on the ground that the petition showed on its face the court was without jurisdiction. No ruling was made on this demurrer. On April 8, 1949, Dimmie Lemon filed in the probate court, in the estate of Bates T. Hamilton, her petition for allowance of demand in which she alleged issuance of the bonds in manner above stated and that she was then the sole owner and that the estate of Bates T. Hamilton had no interest in the bonds and that the administrator claimed the bonds and wrongfully refused to deliver possession to her although demand had been made. In her statement of demand she also made reference to her action pending in the district court, and prayed that her demand be transferred to the district court for hearing and in due course that was done.

No formal order that the replevin action and the demand be heard together seems to have been made but evidence was taken from which the trial court, on September 19, 1949, found that the bonds "were the sole and exclusive property of Bates T. Hamilton in his lifetime and that the petitioner had no right, title or interest therein, and upon his death they become and now are a part of the assets of his estate" and that the petitioner should be required to execute such instrument as may be necessary to effectuate the finding and judgment of the court, and it entered judgment accordingly. On the following day the parties stipulated that the evidence taken might be considered in both proceedings and that stipulation was approved in the journal entry of judgment later filed. Dimmie Lemon's motion for a new trial was denied and she perfected her appeal to this court.

An extensive review of the evidence is not necessary, for there was not much controversy as to the facts. The evidence of Dimmie

Lemon showed the facts as to the divorce, the joint bank account, the purchase of the bonds and the deposit of them for safekeeping as heretofore outlined. It was stipulated that the bonds were in the above named bank and that Bates T. Hamilton in his lifetime had the right to obtain the bonds if he so desired. The administrator called Dimmie Lemon as a witness, and she testified as to the divorce and that "We had no property at all except the cash." Over objection that the evidence was immaterial and irrelevant, did not prove or disprove any issue, and was incompetent under the "United States Treasury Department Regulations Governing United States Savings Bonds'" later referred to, inquiry was made concerning letters written by Dimmie to Bates which were received in evidence, and material parts of which are summarized. In a letter of February 27, 1946, she said, "Did you get your bonds? As soon as we can I will help you with them & change them to something else." In a letter of March 20, 1946, she referred to the fact she had collected two sums of money due and had checked $650 out of the bank, "so all together it was $5,424 & it is just as safe in Mid Kans as anywhere." (There is no statement as to how or in whose name it was invested in Mid Kans which is said to refer to a Savings & Loan Association.) She also advised him not to worry about the bonds as she would help at the end of six months to get "it" out of the bank and "I think you would be more satisfied to put in Mid Kans." Further on she said, "So you see I can't get far with $5,000." In another letter of May 15, 1946, she said she would keep the bonds in mind so when the six months were up if he wanted he could draw them out and put the money in Mid Kans which she thought was best. Under date of January 6, 1947, Dimmie Lemon wrote a letter to an employee of the escrow department of the above-named bank that she would like to have her name released on the bonds and if required papers were sent she would sign a release and return it. Under date of January 9, 1947, the bank employee answered that the receipt for the bonds was signed only by Bates T. Hamilton and therefore the bonds would be delivered to him upon his returning the original receipt. The portion of the letter advising as to reissue of the bonds to Mr. Hamilton need not be set forth. There is no showing that Bates T. Hamilton was aware of the last two letters. There was no contention that any effort was ever made to surrender the bonds originally issued either for payment or for reissue to a single owner.

On cross examination she testified that after the divorce she and Bates T. Hamilton remained on friendly terms; that they had a joint account in the above-named bank; that she wrote the check for $4,800 for the bonds and that Mr. Hamilton was with her at the time.

In her brief appellant presents as the principal question whether the bonds, issued as above stated, upon the death of Bates T. Hamilton became the property of Dimmie Hamilton Lemon as the surviving co-owner, or became an asset of the estate of Bates T. Hamilton, the answer depending on whether the federal regulations above mentioned govern. Secondary questions deal with admission of evidence and the sufficiency of evidence to support the judgment.

Appellant's contention in substance is that bonds of the type involved, issued in the name of co-owners, can only be issued in accordance with the above-mentioned regulations, which are binding and controlling, and that under such regulations, as applied to the facts of this case, the bonds belong to the survivor. That contention requires a review of those regulations. It is noted that there is no contention but that the bonds were issued under and conformably to the regulations issued by the Treasury Department of the United States under date of February 13, 1945. The section numbers hereafter mentioned are part of such regulations. Under 315.1 the regulations "apply generally to all United States Savings Bonds of all series of whatever designation and bearing any issue dates whatever, except as otherwise specifically provided herein" and under 315.2 such bonds are issued only in registered form. Under 315.5 Series G bonds may be registered in the names of individuals in their own right as set forth in 315.4 and under the latter section the bonds may be registered only in the names of individuals in one of the following forms, the only one here applicable reciting:

"(2) Two Persons—Coownership Form: In the names of two (but not more than two) persons in the alternative as coowners, for example:

"'John A. Jones OR Mrs. Ella S. Jones.'

"No other form of registration establishing coownership is authorized."

Subpart D deals with limitations on transfer and judicial proceedings, the portions thereof, and so far as here pertinent read:

"Savings bonds are not transferable and are payable only to the owners named thereon, except in case of the disability or death of the owner, authorized reissue, or as otherwise specifically provided in this Subpart, but in any event only in accordance with the provisions of these regulations."

"Sec. 315.13. Judicial proceedings (judgment creditors, trustees in bank-

ruptcy, receivers of insolvents' estates and conflicting claimants).—A claim against an owner or coowner of a savings bond and conflicting claims as to ownership of or interest in such bonds as between coowners or the registered owner and a designated beneficiary, will be recognized when established by valid judicial proceedings and payment or reissue will be made, upon presentation and surrender of the bond, except as follows:

"(1) No such proceedings will be recognized if they would give effect to an attempted voluntary transfer inter vivos of the bond or would defeat or impair the rights of survivorship conferred by these regulations upon a surviving coowner or beneficiary.

"A divorce decree ratifying or confirming a property agreement between husband and wife or otherwise settling their respective interests in savings bonds, will be recognized and will not be regarded as a proceeding giving effect to an attempted voluntary transfer for the purpose of this section."

Subpart H deals with general payment and redemption provisions and that a Series G bond may be redeemed in whole or in part at the option of the owner prior to maturity, the details not being set forth for the reason no such redemption was attempted here. Subpart L makes provisions concerning two name co-ownership bonds.

"Sec. 315.45. Payment or reissue.—A savings bond registered in the names of two persons as coowners in the form, for example, 'John A. Jones or Mrs. Mary C. Jones', will be paid or reissued as follows:

"(b) Reissue during the lives of both coowners.—During the lives of both coowners the bond may be reissued upon the request of both, as follows:

"(2) If the coowners are divorced from each other after the issue of the bond, the bond may be reissued in the name of either coowner, alone or with a new coowner or a beneficiary. The request must be supported by a copy of the divorce decree, certified by the clerk of the court under its seal. Application for the appropriate form to be used hereunder may be made to a Federal Reserve Bank or to the Treasury Department, Division of Loans and Currency, Merchandise Mart, Chicago 54, Illinois.

"(c) Payment or reissue after the death of one coowner.—If either coowner dies without the bond having been presented and surrendered for payment or authorized reissue, the surviving coowner will be recognized as the sole and absolute owner of the bond and payment or reissue, as though the bond were registered in his name alone, will be made only to such survivor. If the survivor requests reissue, he must present proof of the death of the other coowner."

We note also Subpart N dealing with deceased owners, the first sentence of Sec. 315.47 reading as follows:

"Upon the death of the owner of a savings bond *who was not survived by a coowner or* designated beneficiary and *who had not during his lifetime pre-*

*sented and surrendered the bond to a Federal Reserve Bank or the Treasury Department for an authorized reissue,* the bond will be considered as belonging to his estate and will be paid or reissued accordingly, as hereinafter provided, except that reissue under the provisions of this Subpart will not be made to a creditor." (Emphasis supplied.)

There has been no previous case before this court involving the force and effect of the above treasury regulations, nor dealing with any question of ownership of United States Savings Bonds where co-owners have been named, or where one owner is named but the bond is payable on his death to another. In view of the concession of the appellee hereafter referred to, it is not necessary that we make an exhaustive review of the decisions of other states, where the question of ownership has been considered.

In *Meyer v. Mercier,* 102 Colo. 422, 80 P. 2d 332, (1938) the action was to determine ownership of $7,500 of "Baby Bonds" each made payable to "Mrs. Josephine M. Stanley or Mrs. Corrine S. Mercier," the question being whether title passed under the will of Mrs. Stanley or whether the bonds belonged to Mrs. Mercier as the named survivor. In part the Supreme Court said that under art. VI, sec. 2 of the federal constitution, the laws of the United States were the supreme law of the land and every judge in every state is bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding, and that when congress determined that direct obligations of the government should be payable as provided by the act and regulations thereunder, it was not for the court to say that it had exceeded its powers. The judgment of the lower court holding the survivor to be the owner was affirmed.

In *Conrad v. Conrad,* 66 Cal. App. 2d 280, 152 P. 2d 221, (1944) Conrad as agent for Mrs. Inman purchased United States Savings Bonds payable to Mrs. Inman or Mr. Conrad, which he placed in her safety deposit box, making a list which was delivered to her. She retained possession of the bonds until her death. The action was to determine ownership claimed by Conrad, the plaintiff, and the estate of Mrs. Inman. In that opinion may be found reference to *Sinift v. Sinift,* 229 Iowa 56, 293 N. W. 841, relied on by appellee here, but which the California court did not follow. The court in deciding the bonds went to the survivor and not to the estate of the deceased co-owner, said:

"[3a] In cases from other jurisdictions which announced what we term the 'majority rule' it is held that when the coowner, who furnishes the money with which to pay for the bonds, dies, they belong to the surviving coowner with no interest left in the deceased's estate. They hold that the question is not

one of gift but of contract under the federal regulations, those regulations providing for exclusive ownership in the surviving coowner, and that death terminates all interest of the other coowner. Some of the bonds in those cases were issued to two persons as coowners, and others to the purchaser, and upon his death, to a named beneficiary. There seems to be no logical distinction to be made between the rights in the bonds of a surviving coowner or a surviving beneficiary.

"The following cases support the foregoing rule: *Warren v. United States,* 68 Ct. Cl. 634, certiorari denied, 281 U. S. 739 [50 S. Ct. 346, 74 L. Ed. 1154]; *United States v. Dauphin Deposit Trust Co.,* 50 F. Supp. 73; *In re Deyo's Estate,* 180 Misc. 32 [42 N. Y. S. 2d 379]; *In re Karlinski's Estate,* 180 Misc. 44 [43 N. Y. S. 2d 40]; *In re Di Santo's Estate,* 142 Ohio St. 223 [51 N. E. 2d 639]; *In re Stanley's Estate,* 102 Colo. 422 [80 P. 2d 332]; *Franklin Washington Trust Co. v. Beltram,* 133 N. J. Eq. 11 [29 A. 2d 854].

"In the last cited case the court said:

" 'The statute authorizing the Secretary of the Treasury to issue Savings Bonds subject to such terms and conditions, as he may prescribe, is a valid exercise of the constitutional power "To borrow Money on the credit of the United States." Art. I, Sec. 8, Cl. 2. The borrowing power necessarily includes the power to fix the terms of the Government's obligation. *Perry v. United States,* 294 U. S. 330, 351, 55 S. Ct. 432, 79 L. Ed. 912, 95 A. L. R. 1335; *Legal Tender Cases,* 110 U. S. 421, 444, 4 S. Ct. 122, 28 L. Ed. 204. The treasury regulations under which the bonds were issued and reissued are within the authority given the Secretary by the Congress and have the force of Federal law. *United States v. Birdsall,* 233 U. S. 223, 34 S. Ct. 512, 58 L. Ed. 930; *United States v. Janowitz,* 257 U. S. 42, 42 S. Ct. 40, 66 L. Ed. 120. No state law can vary the terms of the Federal obligations or derogate from their full enforceability. Constitution, Art. VI, Cl. 2; *Irvine v. Marshall,* 20 How. 558, 15 L. Ed. 994; *Ruddy v. Rossi,* 248 U. S. 104, 39 S. Ct. 46, 63 L. Ed. 148, 8 A. L. R. 843.

" 'The Treasury regulations above quoted were not devised solely for the protection of the Treasury, to simplify its task of determining whom to pay in case of the death of the registered owner. The regulations have the further effect of defining the rights of the registered owner and the beneficiary as between themselves, for these rights inter sese are the reflection of the contract obligation of the United States to the owner and to the beneficiary severally. The title of the registered owner, his cause of action against the United States, is cut off by his death; the beneficiary thereupon becomes sole and absolute owner.' " (l. c. 285.)

In *re Estate of Murray,* 236 Iowa 807, 20 N. W. 2d 49, (1945) the proceeding was to determine ownership of bonds purchased by Murray, one-half of which were made payable to his wife Mary E. Murray and the other half to Edward J. Murray or Mary E. Murray. The lower court determined the bonds belonged to Mary E. Murray and the Supreme Court affirmed. The court quoted approvingly from *Conrad v. Conrad,* supra, a portion of the quotation made above as well as from cases from other jurisdictions to the

same effect, and held that the United States Treasury Bonds were issued under regulations which created a contractual relationship as to the co-owners, and that such bonds were the absolute property of the surviving co-owner.

In *Harvey v. Rackliffe*, 141 Me. 169, 41 A. 2d 455, (1945) the bonds involved were issued in the name of William A. Griffin, payable on death to Etta E. Covel, a form permitted under United States Treasury regulations. The reasoning of that case is applicable to co-ownership bonds. There a rather exhaustive review of· the authorities may be found to which reference is made, and the weight of authority found to be in line with the rule of the cases previously cited. That court denominated the decisions in *Decker v. Fowler*, 199 Wash. 549, 92 P. 2d 254, 131 A. L. R. 961; *Sinift v. Sinift*, 229 Iowa 56, 293 N. W. 841; and *Deyo v. Adams*, 178 Misc. 859, 36 N. Y. S. 2d 734, as unsatisfactory. The holding of the court is reflected in the headnotes appearing in the official report:

"Treasury Regulations in respect to the transfer of United States war savings bonds are a proper exercise of the power given to the Secretary of the Treasury by the Congress; and they accordingly have the force and effect of Federal law.

"Under the provisions of the Federal constitution Congress has the power 'to borrow Money on the credit of the United States,' and 'to make all Laws which shall be necessary and proper for carrying into Execution' this power. Art. VI, Clause 2, provides that these laws 'shall be the supreme Law of the Land; and the judges in every state shall be bound thereby . . .'

"The capacity of the Federal government to borrow money depends on the inviolability of its obligation, on its ability to carry it out strictly in accordance with its terms. If the state may treat the bonds here involved, or the proceeds of their sale, as the property of some person other than the one whom the contract has designated, the government has thereby been prevented from carrying out the agreement into which it has entered.

"In this case there was a contract with the United States for the benefit of a third party whose rights arise solely from the contract and in no sense by reason of a grant or gift; this contract gives the beneficiary a present, vested, though defeasible interest; it is governed by Federal law and must be enforced in accordance with its letter and its spirit uniformly throughout the United States; and no state statute or rule of law may stand in the way of such enforcement.

"Because of the supremacy of Federal law a state rule has no application to this contract." (Syl.)

Many other decisions to like effect may be found in the annotations in 140 A. L. R. 1435, 161 A. L. R. 170, 168 A. L. R. 245, 173 A. L. R. 550, and other annotations therein referred to.

In order that there be no doubt as to the appellee's position we quote the opening part of the argument set forth in his brief:

"At the outset in this brief appellee will concede, as he conceded in the trial court, that the Treasury Regulations covering government bonds provide that bonds issued to co-owners go to the survivor on the death of the other; that attempted gifts of bonds inter vivos are not permitted; that the administrator of the estate of a deceased co-owner has no title as against the surviving co-owner. Let it also be conceded that a majority of the courts of last resort which have passed on the matter give effect to the Treasury Regulations and hold that government bonds are not transferable without reissue.

"Thus appellee does not quarrel with the law cited in appellant's brief in this court and if the issue here were a simple legal question stated in this fashion:

" 'As between a surviving co-owner of government bonds and the administrator of the deceased co-owner, who takes title?'
there would be nothing to argue about.

"The appellee takes the position here and successfully contended in the trial court that the issue is not as above quoted. The issue presented to the trial court in this case was an entirely different one. It was:

" 'Were these bonds actually co-ownership bonds or were they, on the contrary, in fact and in intention, the sole property of Bates T. Hamilton?'

"This question is one of fact—one which the trial court determined on ample evidence of high quality—one the determination of which no Treasury Regulations can withdraw or withhold from the prerogatives of a Kansas Court."

Following the above is a résumé of the evidence introduced over appellant's objection, and our attention is directed to the evidence admitted and the weight to be given it, and reference is made to our decision in *Spark v. Brown*, 167 Kan. 159, 205 P. 2d 938, where it was held that when one desires to create a joint tenancy with the right of survivorship language must be used to make that intention clear, otherwise it will not be created, and to *Sinift v. Sinift*, 229 Iowa 56, 293 N. W. 841, where it was held, in effect, that Congress in enacting legislation pertaining to United States Bonds, did not intend to authorize the Secretary of the Treasury to fix by regulation the title to or the ownership of the bonds or the money owing thereon, and to *Katz v. Driscoll*, 86 Cal. App. 2d 313, 194 P. 2d 822, (1948) which, while recognizing the rule of cases holding that as between the government and the survivor of co-ownership bonds, the courts will recognize the survivor, states that there is no case that holds that where the bonds are the result of fraud the persons defrauded cannot pursue the proceeds of such bonds in the hands of one who is a party to the fraud, and says that to so hold would put a high premium on fraud. In that case Dolan, on his representation that he was an indigent, received public aid. Actually he was in funds which he invested in United States Savings

Bonds, payable to himself or in event of his death to Driscoll. Dolan's administrator claimed the bonds, and the opinion deals with a question of pleading. The general rule heretofore noted is recognized as to payment to the beneficiary, but it was held that equity and fair dealing require that a person benefiting by a fraudulent transaction be required to disgorge the proceeds independently of the contract between him and the federal government. In substance it was held Dolan's administrator was entitled to only so much of the proceeds of the bonds as was necessary to make up the deficiency of assets in his hands.

*Spark v. Brown,* supra, did not deal with United States Savings Bonds. In any event a reading of that opinion will disclose that it is not in point here on the facts. *Sinift v. Sinift,* supra, has been criticized and not followed, as cases reviewed above disclose. Concededly it promulgates a minority rule. *Katz v. Driscoll,* supra, is hardly in point here for appellee makes it clear that he did not in the trial court and does not in this court, assert that Dimmie Lemon was guilty of any fraud and that perhaps the worst that can be said is that her conduct smacks of unfair dealing that equitable principles ought to prevent and she should not be permitted to use the treasury regulations as a lock on the door of a court of equity. We may observe that the bonds were purchased when Bates and Dimmie were both present, he took them into possession and retained them and must be presumed to have known that if he died she would get the bonds. He made no effort to cash the bonds, as he could have done without let or hindrance and so far as the record is concerned there is no evidence whatever that he claimed at any time that he was sole owner, or that Dimmie had no interest in the bonds, or that she had deceived or defrauded him in the slightest.

While we have no difficulty in understanding the contention advanced by the appellee as summed up in the question he says is the issue presented, we cannot agree.

In our opinion, the majority rule heretofore stated in *Conrad v. Conrad,* supra, and other cases, is soundly based on statute and authority and should be followed. Under that rule, and under the undisputed facts in this case, when Bates T. Hamilton and Dimmie Hamilton purchased the bonds as co-owners and Bates T. Hamilton then took and retained possession of them, without making any effort to cash the bonds or to cause them to be reissued in his name as sole owner, upon his death the bonds became the sole property of Dimmie as the surviving co-owner.

In view of our conclusion we need not discuss the question of the competency of evidence offered by the appellee further than to say that insofar as it tended to show an oral gift of Dimmie's interest to Bates, or that Dimmie might have been willing to consent to a re-issue had Bates so wanted, it was incompetent as tending to vary the terms of the contract evidenced by the bonds and the treasury regulations under which they were issued.

It may be observed that Dimmie Lemon's claim to the bonds, which were in the possession of the administrator of the estate of Bates T. Hamilton, was properly asserted in the probate court.

The judgment of the trial court is reversed and the cause is remanded to the trial court to render judgment in favor of the appellant Dimmie Lemon.