348 P.2d 473

In re ESTATE of Curtis Maxon CHASE,
Deceased.

Maxon CHASE and Mabel Matheson, Guardian ad litem for Curtis Greer Chase,
minor, Plaintiffs-Appellants,

v.

Janice REID, Defendant-Respondent.

No. 8729.

Supreme Court of Idaho.

Jan. 15, 1960.

J. Ward Arney, Pat W. Arney, W. B. McFarland, McFarland & McFarland, Coeur d'Alene, for appellants.

H. S. Sanderson, James T. Knudson, McNaughton & Sanderson, Coeur d'Alene,

**4**

Brown & Thayer, Spokane, Wash., for respondent.

SMITH, Justice.

Curtis Maxon Chase died February 8, 1954. He left a last will and testament bearing date August 31, 1951, in which he bequeathed "Ten Thousand ($10,000.00) Dollars saving account and any accruals thereto on deposit in the First Federal Savings and Loan, Coeur d'Alene, Idaho, in the joint name of myself and my daughter, Janice Reid," to his two grandsons, appellants Maxon Chase and Curtis Greer Chase, to be used for purposes of their education or, in the alternative, to be given to them upon their attaining the age of 25 years. He devised and bequeathed the rest, residue and remainder of his estate to his daughter Janice Reid and to appellants in equal shares.

At the time testator executed his will there were two deposits, each of $5,000, in First Federal Savings and Loan Association of Coeur d'Alene, in two separate joint tenancy right of survivorship savings accounts, Nos. 9167 and 10485, in the names of testator and respondent; also, at said time there was, and continued to be, on deposit in Coeur d'Alene Branch of The Idaho First National Bank a joint tenancy right of survivorship checking account in the names of testator and respondent, which totaled $13,547.63 at the time of testator's death; also, at said time testator had saving account No. 11–15196 in the National Bank, which on April 28, 1952, he caused to be converted to a joint tenancy right of survivorship saving account, in the names of testator and respondent.

Testator, February 26, 1953, withdrew from said savings and loan association the two savings accounts Nos. 9167 and 10485, and accruals thereto, totaling $10,510.11, and deposited the same in the joint tenancy survivorship saving account No. 11–15196 in said National Bank, which account at the time of testator's death totaled $17,828.87.

Testator, January 28, 1954, opened a joint account but without right of survivorship in Rathdrum State Bank, Rathdrum, Idaho, in the names of himself and respondent.

During the period commencing in May, 1942, and ending in December, 1944, testator purchased ten Series E, United States Savings Bonds, totaling $1,025 in matured value, made payable to himself or his daughter, respondent.

The last will and testament of Curtis Maxon Chase, deceased, was duly admitted to probate during March, 1954, in the probate court of Kootenai County and respondent was appointed and qualified as executrix. Some three months thereafter respondent by her application filed in the probate court sought to discharge J. Ward Arney as the attorney representing her as the executrix, and the estate. Mr. Arney resisted and the court denied and dismissed the application.

Difficulties also arose between respondent and Mr. Arney, her attorney, because of respondent's insistence that the bank accounts and United States savings bonds in fact belonged to her individually and should not be included as assets of decedent's estate. Issues were joined and a hearing had in the probate court relating to the ownership of said accounts and bonds. The court, pursuant to its order settling the ownership of such property, found and ordered that the accounts Nos. 9167 and 10485 amounting to $10,510.11 transferred by testator from First Federal Savings and Loan Association to the joint tenancy survivorship saving account No. 11–15196 in Coeur d'Alene Branch of The Idaho First National Bank, together with all accruals on the transferred accounts, constituted the fund bequeathed, by decedent's will impressed with an equitable trust, for the use and benefit of his grandsons, appellants. The court also found that testator in establishing saving account No. 11–15196 did so, not intending to make a gift to his daughter, respondent, but for purposes of his own convenience and that such account should be distributed in accordance with the terms of decedent's will.

The probate court also found and ordered that all other checking and saving accounts, standing jointly in the names of Curtis Maxon Chase and respondent at the time of decedent's death belonged to and were assets of the estate and that no part thereof was respondent's property; also, that the United States saving bonds in-

scribed in the names of Curtis Maxon Chase and respondent should be treated as belonging to respondent, the co-owner, on the death of decedent, subject only to inheritance taxes to be paid by the co-owner.

Both parties appealed from portions of said order upon questions of both law and fact, to the district court where the court tried the issues de novo without a jury.

The district court after a hearing, found that the joint account in Rathdrum State Bank, by the terms of the joint signature card relating to the account, did not give rise to the right of survivorship in respondent as a co-owner, and that such account remained an asset of the estate governed by the terms of decedent's will; also found that the joint accounts amounting to $10,-510.11, transferred by Mr. Chase from First Federal Savings and Loan Association to the saving account in Coeur d'Alene Branch of The Idaho First National Bank, although transferred to a joint bank account with right of survivorship by and between him and his daughter, respondent, were impressed with an equitable testamentary trust and that respondent held such funds as trustee for appellants, grandsons of decedent, under the terms of decedent's will; and further found that the United States saving bonds and the remaining bank accounts were the properties of respondent individually, as surviving joint tenant.

Appellants appealed from the portions of the judgment adjudging respondent individually to be the owner of the United States saving bonds; also of the remaining bank accounts in Coeur d'Alene Branch of The Idaho First National Bank, being the amount remaining in the saving account No. 11–15196 after setting aside therefrom the amount of the $10,510.11 and accumulated interest, impressed with a testamentary trust for the use and benefit of appellants, decedent's grandsons; and the checking account.

Appellants' assignments of error read as follows:

"The judgment erroneously awarded the daughter the checking account and the residue of the savings account, all in The Idaho First National Bank, and all of the bonds, and specifically:

"1. Held the 'right of survivorship' clause on a signature card to be conclusive; and

"2. Held the inscribed terms on U. S. bonds to be conclusive; and

"3. Ignored the clearly proven intentions of Mr. Chase to the contrary; and

"4. Failing to decide that the bank accounts and bonds awarded the daughter only stood in joint names for the business and personal convenience of Mr. Chase.

"5. Failing to require the daughter to prove by clear, convincing evidence the intention on the part of Mr. Chase, that she should succeed to these accounts and bonds."

Assignment No. 1 is without merit because the trial court's action in allowing the introduction of evidence bearing upon Mr. Chase's intent, sufficiently refutes appellants' contention that the trial court deemed the right of survivorship clause of the bank signature cards to be conclusive. Assignment No. 2 is without merit because the trial court correctly so ruled, as hereinafter shown.

Assignments Nos. 3 and 4 relate to questions of fact and No. 5 to one of mixed fact and law. Those assignments question the sufficiency of the evidence to sustain the trial court's findings and judgment based thereon, that respondent individually, and not decedent's estate, succeeded to the ownership of said bank accounts and bonds upon the death of testator.

I.C. § 55–104 reads in part as follows:

"Every interest created in favor of several persons in their own right is an interest in common, unless acquired by them in partnership, for partnership purposes, or unless declared in its creation to be a joint interest, or unless acquired as community property."

I.C. § 26–1014, relating to the creation of joint bank accounts with right of survivorship, reads as follows:

"When a deposit has been made, or shall hereafter be made, in any bank, or a savings account has been opened or shall hereafter be opened in any savings and loan association, or federal savings and loan association, in the names of two or more persons, payable to any of such persons or payable to the survivor, or survivors, such deposit, or savings account, or any part thereof, or interest or dividend thereon, if not then attached at law or in equity in a suit against any of said persons, may be paid to any of said persons, whether the other be living or not, and such payment shall discharge the bank, savings and loan association, or federal savings and loan association making the same from its obligation, if any to either or any of such other persons or their legal representatives for or on account of such deposit or savings account. This section shall apply to husband and wife to all intents and purposes the same as to other persons."

This Court on three occasions has considered so-called joint tenancy survivorship bank accounts. The first case, Gray v. Gray, 78 Idaho 439, 304 P.2d 650, involved such an account of a father and his minor daughter. The father, at his death, left

surviving his daughter who claimed the account as a gift to her by her father of his separate property, whereas, the father's surviving widow claimed the account as community property. This Court held that under the evidence adduced the account was the father's separate property, which, upon death of the father, constituted a completed gift of the father's interest in the account to his daughter. The only issue before the trial court was whether the property was separate or community; for had the property been community one spouse could not have given away the other spouse's interest therein without her consent. Anderson v. Idaho Mutual Benefit Association, 77 Idaho 373, 292 P.2d 760.

■ The Gray case recognizes that a joint tenancy survivorship account does not have all the elements of a completed gift, at the time of its creation, although the effect of a completed gift may be accorded such an account if created as provided by I.C. §§ 26–1014 and 55–104; also recognizes that such an account may not always inure to the survivor. The holding is limited to *the facts* involved in the case then before the court and none other. In short, the Gray case does not constitute a so-called joint survivorship account conclusive as to the right of survivorship.

■ The next case, Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380, followed the Gray case, again holding that whether the right of survivorship of the funds in a so-called joint tenancy survivorship bank account attains, depends upon the evidence adduced as to the intent of the owner of the funds in creating the account. In so ruling the Court adopted the language of 48 C.J.S. Joint Tenancy § 3 e, pp. 919–920, as follows:

"Whether or not a bank account is held in joint tenancy with right of survivorship depends on the intention of the parties, determined in the light of all the circumstances. * * * notwithstanding the form of the deposit, a joint tenancy is not created where the account was made joint purely for convenience and without the intent to create any property interests."

And the rule of Clausen v. Warner, 118 Ind.App. 340, 78 N.E.2d 551, 552, stated as follows:

" * * * the intention of the owner of money in depositing it in a joint account is a question of fact where there is evidence as to the intention."

The above language harmonizes the Gray case. Both decisions recognized the doctrine that the court will look to the intention of the parties relating to the creation of the account; if the account is intended purely for the convenience or business necessity of the putative donor, then no right of survivorship attains.

■ The Shurrum case paved the way for the third decision, Idaho First Nat.

Bank v. First Nat. Bank of Caldwell (and Griffiths), 81 Idaho 285, 340 P.2d 1094, 1098, sometimes known as the Griffiths' case, wherein this Court held:

"In determining the effect of a joint bank account agreement, the determinative consideration is the intent of the depositor, and this is a question for the trier of facts. Shurrum v. Watts, 80 Idaho 44, 324 P.2d 380. Recently this Court held, in Shurrum v. Watts, supra, that during the lifetime of the parties the presumption of joint tenancy and right of survivorship is rebuttable. After the death of the sole depositor, the establishment of his intent is a more difficult problem, such as in the case at hand.

\* \* \* \* \* \*

"This Court has limited the effect of the Gray case in the Shurrum case by allowing living parties to testify as to the intent of the depositor in creating the joint account. Strict enforcement of these agreements without regard to intent of the parties making them would present serious conflicts with our statutes relating to the laws of intestate succession, community property, testate distribution, and limitation on charitable bequests.

\* \* \* \* \* \*

"Where competent evidence, and all of the reasonable inferences to be drawn therefrom, establish an intent of a depositor, since deceased, contrary to that indicated in the creation of a joint account, the assertion of joint tenancy will not be sustained. The evidence presented herein is sufficient to overcome the presumptive effect of the agreement, and amply sustains the findings of fact, conclusions of law, and judgment of the trial court. Defendants have failed otherwise to establish the necessary elements of a gift."

The Court then, in the Griffiths' case, sets out the rule applicable in the case at bar, as follows:

"Where money in a joint account is deposited by one party, and thereafter a question of the depositor's intent arises, the party asserting the gift must prove all the elements of a gift, excepting irrevocable delivery, by clear and convincing evidence. The question of intent of decedent having been raised, defendants were required to assume the burden of proof and to establish by clear and convincing evidence such elements of a gift. Claunch v. Whyte, 73 Idaho 243, 249 P.2d 915; In re Estate of Randall, 64 Idaho 629, 132 P.2d 763, 135 P.2d 299; McNabb v. Brewster, 75 Idaho 313, 272 P.2d 298."

The Bank Accounts.

While a joint tenancy survivorship bank account created pursuant to I.C. § 26–

1014, may be considered as an agreement between the named depositors and the bank, Gray v. Gray, 78 Idaho 439, 304 P.2d 650, nevertheless, the statute which authorizes joint account agreements, I.C., sec. 26–1014, is intended primarily for the protection of the banks. It is not intended to determine the rights of the depositors and the rights of those claiming under them. Idaho First Nat. Bank v. First Nat. Bank of Caldwell (Griffiths' case), 81 Idaho 285, 340 P.2d 1094, and the cases therein quoted.

■ Further, nothing is contained in I.C. § 26–1014 which creates a conclusive presumption that the ownership of the funds in any such account shall become the property of the survivor.

■ The issue of Mr. Chase's intent in creating the accounts having been raised, the question is whether respondent, by clear and convincing evidence, proved a gift to her of those bank accounts, completed upon the death of decedent. With this in mind, we shall review the evidence.

The evidence in favor of respondent may be briefly summarized to be:

Testator's creation and continuance of the joint tenancy survivorship bank accounts, and respondent's self-serving statement, reading:

"* * * When my dad set up the joint accounts, he said should anything happen to him those accounts in my

name I could do with as I saw fit. He didn't specify any special accounts."

And that in favor of appellants is summarized:

Respondent's testimony showing that her brother Max, up to the time of his death, was a joint depositor with Mr. Chase, respondent's reason being, "He [the brother] was because he worked with him [the father]"; it having been shown that the brother was in business with his father; that during the brother's lifetime respondent was also named on the accounts, and in her brother's stead after his death; and while stating that she and her brother were co-owners with the father, she also testified in positive terms, referring to the two $5,000 accounts in the savings and loan association:

"Q. As a matter of fact, all the money in those accounts, those joint savings accounts was money your father had deposited. A. Yes."

Respondent's testimony, when questioned further about those particular accounts, reads:

"Q. You did not have any agreement with your dad that the two $5,000 accounts in the First Federal were to go to you?

\*  \*  \*  \*  \*  \*

"A. Mr. Arney, when my dad set up the joint accounts, he said should anything happen to him those accounts

in my name I could do with as I saw fit. He didn't specify any special accounts."

And although respondent's name appears on the signature cards of the saving and loan association with that of her father, one signature card being dated January 25, 1947, and the other July 21, 1950, her contradictory testimony then appears:

"A. I didn't know that my father had this account in the First Federal Savings and Loan, until I read the will."

The testimony of Mr. Arney, going back to the approximate time he drafted testator's will, as to who owned the moneys in the various so-called joint tenancy survivorship accounts in the building and loan association and the banks, as follows:

"Q. Did he at that time make any statement to you as to whose money it was in the accounts? A. Oh, yes.

\* \* \* \* \* \*

"A. It was all his money."

The testimony of Mr. Arney as to testator's reason for maintaining the various accounts and the United States savings bonds in the joint names of himself and his daughter,

"A. \* \* \* I asked him why he had his money tied up in joint accounts and joint bonds with his daughter and he explained to me—\* \* \* He told me that he couldn't run around like he used to and he had her name on these accounts and bonds because she could do the running around. Post Falls had no bank and he banked at Rathdrum, some 15 miles away, and at Coeur d'Alene, some 10 miles away, and couldn't always find parking spaces near the bank and she could attend to the depositing and withdrawal and it was an aid to him."

indicative of testator's purpose in the premises as one of business convenience;

The testimony of Mr. Arney as to testator's statement that he had "absolute faith in his daughter," which was Mr. Chase's answer to Mr. Arney's warning, in the light of the testamentary directives contained in the will, that trouble might arise if the accounts were left or continued in the status of joint tenancy with right of survivorship;

The last will and testament of Curtis Maxon Chase, as indicative of his property interests and his intended disposition thereof. Testator after bequeathing the $10,000 and accruals thereon to the trust department of a certain bank and to respondent, his daughter, as trustees, for the use and benefit of appellants, his two grandsons, then bequeathed the remainder of his estate to his daughter and his two grandsons, one-third to each;

The testimony of Mabel Matheson, mother of appellants, as to the statements which

Mr. Chase made some few days before his death; the statements were to the effect that testator by his will was leaving $5,000 to each grandchild as an educational fund; and was leaving the balance of his moneys in the bank remaining after payment of his bills, and his real estate, to his grandsons and respondent, one-third to each; that when Mr. Chase made such statement at "Mrs. Davis's house" where he was staying, respondent was there at the house although "back further from the front room into the kitchen."

Respondent's testimony that she did not hear her father make those statements, not denying however that at said time she may have been busy going back and forth from the dining room to the kitchen, and admitting that she saw her father and Mrs. Matheson talking together on that and other occasions;

Mr. Chase's great love for appellants, his grandsons, as shown by the various witnesses who testified;

Respondent's original verified petition to probate decedent's will, in which she listed as assets of decedent's estate the bank accounts and bonds which she later claimed as her own property.

Clearly, under the rule of the Griffiths' case respondent failed to sustain the burden of proof by clear and convincing evidence that testator Chase intended a gift, effectual upon his death, to respondent, of his moneys deposited in the savings and checking accounts in Coeur d'Alene Branch of The Idaho First National Bank. We are constrained to observe however that when the trial court tried this case and entered its judgment August 15, 1958, it did not have the benefit of the decision in the Griffiths' case, 81 Idaho 285, 340 P.2d 1094, rendered June 23, 1959.

The United States Savings Bonds.

In approaching the questions relative to the United States savings bonds, we shall examine the authority of the United States government to borrow money and, as evidence of its indebtedness, to issue its bonds, and the legal aspects of the bonds as to both the legal title thereof, and equitable title to the proceeds.

United States Constitution, Art. 6, clause 2, in part reads:

"This Constitution, and the Laws of the United States which shall be made in pursuance thereof; * * * shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Article 1, § 8, clause 2, provides that the Congress shall have power:

"To borrow Money on the credit of the United States; * * *."

and Article 1, § 8, clause 18, authorizes the Congress:

"To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

The Congress, in the exercise of its power thus vested, enacted sec. 22 of the Second Liberty Bond Act of 1917, as amended in 1935, 31 U.S.C.A. § 757c, authorizing the Secretary of the Treasury to issue savings bonds, which Act reads in part as follows:

"(a) * * * The various issues and series of the savings bonds and the savings certificates shall be in such forms, * * * and shall be issued in such manner and subject to such terms and conditions * * *, and including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe."

The Secretary of the Treasury, pursuant to the authority so granted, adopted consistent regulations, codified as 31 Code of Federal Regulations, part 315, relating to United States savings bonds, which in part provide:

That United States savings bonds shall be issued only in registered form, which must express the actual ownership of and interest in the bond, and except as otherwise specifically provided in the regulations, "will be considered as conclusive of such ownership and interest." 31 C.F.R., Sec. 315.5.

That the co-ownership form of registration shall be in the names of two, but only two, persons in the alternative, as co-owners, in the form, "John A. Jones or Ella S. Jones," and no other form of registration establishing co-ownership is authorized. 31 C.F.R., Sec. 315.7.

That if either co-owner dies without the bond having been presented and surrendered for payment or authorized reissue, the survivor will be recognized as the sole and absolute owner, and payment or reissue will be made as though the bond were registered in the name of the survivor alone. 31 C.F.R., Sec. 315.61.

That the presentation and surrender of a bond by one co-owner for payment establishes his right to receive the proceeds of the bond. 31 C.F.R., Sec. 315.61.

■ The statute which authorized the Secretary of the Treasury to issue savings bonds subject to terms and conditions he may prescribe is a valid exercise of constitutional power. U.S.Const. Art. 1, § 8, clause 2; Franklin Washington Trust Co. v. Beltram, 133 N.J.Eq. 11, 29 A.2d 854; Ervin v. Conn, 225 N.C. 267, 34 S.E.2d 402; Annotation, 37 A.L.R.2d 1221.

■ The treasury regulations under which the bonds are issued form part of the contract between the federal government and the purchaser of the bond, and such regulations have the force of federal law. Chambless v. Black, 250 Ala. 604, 35 So. 2d 348; Lee v. Anderson, 70 Ariz. 208, 218 P.2d 732; In re Stanley's Estate, 102 Colo. 422, 80 P.2d 332; Lemon v. Foulston, 169 Kan. 372, 219 P.2d 388; In re Hendricksen's Estate, 156 Neb. 463, 56 N.W.2d 711; Hart v. Hart, 194 Misc. 162, 81 N.Y.S.2d 764; Stephens v. First National Bank, 65 Nev. 352, 196 P.2d 756; Ervin v. Conn, 225 N.C. 267, 34 S.E.2d 402; Waltenberger v. Pearson, 81 Ohio App. 51, 77 N.E.2d 491; Katz v. Driscoll, 86 Cal.App.2d 313, 194 P.2d 822; Annotation, 37 A.L.R.2d 1221; 31 U.S.C.A. § 757c note 4.

The "majority view" is that when United States savings bonds are registered in the names of two individuals in the alternative, title vests in either co-owner on death of the other. Hinson v. Plowden, D.C.S.C., 91 F.Supp. 836; Chambless v. Black, supra; Lee v. Anderson, supra; In re Church's Estate, D.C., 141 F.Supp. 703; Bell v. Killian, 266 Ala. 12, 93 So.2d 769; Umberger v. Westmoreland, 218 Ark. 632, 238 S.W.2d 495; Chase v. Leiter, 96 Cal.App. 2d 439, 215 P.2d 756; In re Stanley's Estate, 102 Colo. 422, 80 P.2d 332; Berry v. Berry, 208 Ga. 285, 66 S.E.2d 336; In re Clemmons' Estate, 242 Iowa 1248, 49 N.W. 2d 883; Lemon v. Foulston, 169 Kan. 372,

219 P.2d 388; Myers v. Laird, 230 Miss. 675, 93 So.2d 828; Nelson v. Rasmussen, 164 Neb. 274, 82 N.W.2d 418; Stephens v. First Nat. Bank, 65 Nev. 352, 196 P.2d 756; In re Simon's Estate, 5 Misc.2d 1018, 162 N.Y.S.2d 678; Ervin v. Conn, 225 N.C. 267, 34 S.E.2d 402; Lambert v. Lambert, 95 Ohio App. 187, 118 N.E.2d 545; Smith v. Ricks, Tex.Civ.App., 308 S.W.2d 941; In re Barnes' Will, 4 Wis.2d 22, 89 N.W.2d 807; 37 A.L.R.2d 1221 at page 1223.

The principal basis for the "majority view" is that the property rights of the surviving co-owner do not rest in the theory of gift but solely on the bond contract between the purchaser and the federal government, and that the contract, which includes the treasury regulations as part and parcel of the bond provisions, is determinative of the rights of the parties to the bond. See authorities cited supra and 37 A.L.R.2d 1221 at page 1229.

■ The treasury regulations providing for the ownership of the title of United States saving bonds in the surviving co-owner, will not preclude the courts from permitting others to pursue the proceeds, and the courts will not hesitate to impose a constructive or resulting trust on the proceeds in order to achieve a fair result in cases of fraud or inequitable conduct. Anderson v. Benson, D.C.Neb., 117 F.Supp. 765; Chase v. Leiter, 96 Cal.App.2d 439, 215 P.2d 756; Olsen v. Olsen, 189 Misc.

1046, 70 N.Y.S.2d 838; Katz v. Driscoll, 86 Cal.App.2d 313, 194 P.2d 822; In re Hendricksen's Estate, 156 Neb. 463, 56 N.W.2d 711; In re Haas' Estate, 10 N.J. Super. 581, 77 A.2d 523.

Additional jurisdictions, in holding that the "majority view" applies, at least in the absence of fraud, deceit, duress, mistake, or the like, recognize that the existence of such equitable factors might affect the right of the surviving co-owner to sole owner-ship of proceeds of savings bonds. Conrad v. Conrad, 66 Cal.App.2d 280, 152 P.2d 221; In re Murray's Estate, 236 Iowa 807, 20 N.W.2d 49; Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870; Lemon v. Foulston, 169 Kan. 372, 219 P.2d 388; In re Simon's Es-tate, 5 Misc.2d 1018, 162 N.Y.S.2d 678; In re Laret's Will, 190 Misc. 721, 86 N.Y.S.2d 330.

■ Our exhaustive review of the au-thorities leads us to the belief that while the treasury regulations provide a con-venient method of determining ownership of the title to the bonds, those regulations are not intended to determine absolutely the equitable title to the proceeds thereof; accordingly the surviving co-owner, upon the death of the other registered co-owner named on the face of the bond, becomes the absolute owner of the legal title to the bond, and under the said treasury regulations the United States will recognize only the sur-viving owner to whom, under the contract evidenced by the bond, it is obligated to make payment. Particularly, does this fol-low in the light of 31 C.F.R. § 315.15 which provides that the registered form of the bond, which must express actual owner-ship thereof, will be considered as conclu-sive of such ownership, the exceptions, in such section of the regulations referred to, not having application herein.

Returning to the theory of the case at bar, it is a proceeding originating in the probate court to determine the ownership of the United States saving bonds, respond-ent claiming them because she is the named surviving co-owner, which ownership the estate denies, asserting that it is the own-er. Respondent's claim is based upon her alleged ownership of the legal title to the bonds.

In re Murray's Estate, 236 Iowa 807, 20 N.W.2d 49, 56, a widow asserted her own-ership to certain United States saving bonds since she was the named surviving co-owner. The Court, pointing out the dis-tinction between an action designed to void the legal title rather than the equitable title, ruled:

"Equity has broad powers to enforce constructive or resulting trusts to re-lieve against acts of fraud and the like. Such powers relate to equitable title to property as distinguished from the legal title. * * * The widow bases her claim on the fact that she

has legal title to these bonds. The executrix denies that she has such legal title. That is the only issue before us. On that issue, the widow is entitled to prevail."

▇▇▇ Probate courts have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and appointment of guardians, Idaho Const., Art. 5, § 21; I.C. § 1–1202, and limited jurisdiction in equity in matters only of probate, settlement of estates, and appointment of guardians, Wilson v. Fackrell, 54 Idaho 515, 34 P.2d 409. This Court in Dewey v. Schreiber Implement Co., 12 Idaho 280, 85 P. 921, 922, initially announced such rule in holding a legislative enactment to be unconstitutional and void which attempted to extend the jurisdiction of probate courts to hear and enforce mechanics' and laborers' liens and mortgages and other liens upon real property. In construing Idaho Const., Art. 5, § 21, as it relates to jurisdiction of the probate courts, this Court stated:

"* * * We do not think that the framers of the constitution intended to grant equity jurisdiction to probate courts, outside of whatever equity jurisdiction they may have in all matters of probate, settlement of estates of deceased persons and appointment of guardians. * * *

"* * * We recognize the fact that the distinction between suits in equity and actions at law have been prohibited, and that in this state there is but one form of action for the enforcement or protection of private rights or redress of private wrongs, which is denominated as a civil action. That, however, does not abolish the rules of law or rules of equity; they remain, although the distinction between actions at law and suits in equity and the forms of such actions and suits are prohibited by our Constitution."

Anderson v. Benson, D.C.Neb., 117 F. Supp. 765, 767, was a widow's action to establish a contract between herself and her husband, since deceased, to make mutual and reciprocal wills, and to enforce her claim to certain property including United States saving bonds which her husband had caused to be registered in the names of himself or his sister, or his nieces, or nephews, in respective instances, as co-owners or beneficiaries. The defense contended that the Federal Court did not have jurisdiction of the subject matter but that jurisdiction rested in the county court which had jurisdiction in all matters of probate of decedents' estates. In disposing of such contention, which questioned the jurisdiction of the probate court to impress an equitable trust upon the particular property, the Court stated:

"The fact that the County Court of Douglas County, Nebraska, has duly admitted to probate the will of Swen

Anderson, which is different in terms than the one plaintiff alleges her husband agreed to make, does not deprive this court of jurisdiction. While County Courts in Nebraska have exclusive jurisdiction in probate matters, Nebr. Const., Art. V, Sec. 16; R.R.S.Neb. 1943, Sec. 24–503; In re Estate of Bremer, 141 Neb. 251, 3 N.W.2d 411, and purely probate matters are not within the jurisdiction of federal courts, * * *, jurisdiction to enforce specifically a contract or to impress a trust upon particular property is vested in the courts of general jurisdiction in Nebraska, namely, the district courts, and not in the county (probate) courts. Sopcich v. Tangeman, 153 Neb. 506, 45 N.W.2d 478; * * *."

While I.C. § 17–103 provides that on appeal from the probate court on questions of fact or on questions of both law and fact, the action must be tried anew in the district court, nevertheless trial anew or de novo implies or signifies the trying anew of only those issues previously tried in the probate court. State v. Powaukee, 78 Idaho 257, 300 P.2d 488, and authorities therein cited. In Davis v. Parkin, 75 Idaho 266, 269, 270 P.2d 1007, 1008, the rule is stated:

"On a trial de novo the jurisdiction of the district court on appeal from the probate or justice court is purely derivative * * *."

The jurisdiction of the probate court in the case at bar extended only to the determination of the question of ownership of the legal title to the savings bonds and the issue was thus framed and limited; such court had no jurisdiction to entertain or decide any question relating to the equitable title to the bonds or impression of an equitable lien upon the proceeds thereof. Likewise, the district court, by virtue of its limited derivative jurisdiction on the appeal, had no jurisdiction of such equity matters. Both the probate court and the district court on appeal correctly adjudged respondent, in her individual capacity, as the named surviving co-owner, to be the owner of the legal title to the United States saving bonds.

The judgment of the district court adjudging respondent in her individual capacity to be the owner of the certain bank accounts in Coeur d'Alene Branch of The Idaho First National Bank, being the checking account, and the balance remaining in the saving account No. 11–15196 after setting aside therefrom $10,510.11 and interest accumulated thereon as the testamentary trust for the use and benefit of appellants, is reversed, and the cause is remanded with instructions to the district court to enter judgment adjudging the estate of Curtis Maxon Chase, deceased, to be the owner thereof.

The judgment of the district court adjudging respondent in her individual capacity to be the owner of the United States saving bonds, involved in this proceeding, in which she is the named surviving co-owner, is affirmed.

Costs to appellants.

TAYLOR, C. J., and NORRIS, D. J., concur.

PORTER, C. J., and GRAF, D. J., sat at the hearing but died prior to the decision.

KNUDSON and McQUADE, JJ., not participating.